UNITED STATES of America, Appellee,

v.

Joseph Louis CARTER, Appellant.

No. 77–1494.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 8, 1977.

Decided Dec. 29, 1977.

Certiorari Denied April 17, 1978.
See 98 S.Ct. 1618.

Dean P. Gunby, Jr., Baltimore, Md. (Leslie L. Gladstone, Baltimore, Md., on brief), for appellant.

Joshua R. Treem, Asst. U. S. Atty., Baltimore, Md. (Jervis S. Finney, U. S. Atty., Baltimore, Md., on brief), for appellee.

Before BUTZNER, WIDENER, and HALL, Circuit Judges.

PER CURIAM:

This is a criminal appeal by Joseph Louis Carter, who was found guilty of possession of a firearm by a convicted felon. 18 U.S.C. §§ 1202(a) Appendix, and 2.

Carter was an employee of Calvert Oil Company, his duties involving the servicing of oil burners. In connection with his job, Carter was assigned a 1965 Chevrolet van which belonged to Calvert Oil. He was permitted to take the truck home in the evening, but he had no authority to use the van for any purpose not connected with the business of Calvert Oil Company.

In November 1976, Morrie Escann, the owner of Calvert Oil, was contacted by an FBI agent who told him that a Calvert truck had been seen parked near the scene of a bank robbery and that a witness had observed a man running toward the truck, getting in, and driving off. Several days later, upon request by the FBI, Escann gave his written consent to search the van assigned to the defendant.[1]

A search of the truck revealed, wrapped in a black coat liner behind the driver's seat, the .44 caliber revolver later introduced into evidence. Initially, Carter denied any knowledge of the gun. However, in an interview after being advised of his *Miranda* rights, Carter told the FBI agents that he had obtained the gun the night before and had taken it home; but because his wife did not like guns in the house, he had wrapped the pistol in a black coat liner and placed it in the truck.

Carter was tried on a statement of facts which included a recitation of the statements he gave to the agents.[2] When the government rested, the defendant moved the court for dismissal on the ground that the government had failed to prove that the pistol had moved in interstate commerce. Over the objection of the defendant, the court allowed the United States to reopen its case to prove the interstate movement of the gun.[3] Thereafter, the court found Carter guilty as charged and sentenced him to the custody of the Attorney General for two years.

Carter asserts that the district court erred in allowing the government to reopen its case. However, this court has ruled that control over the order of proof is within the trial court's discretion. *Gormley v. United States*, 167 F.2d 454 (4th Cir. 1948); *Williams v. United States*, 151 F.2d 736 (4th Cir. 1945). In a case such as this, especially where the trial is presented to the court, without a jury, it is difficult to discern reversible error which might occur should the court allow a variance in the order of proof. Accordingly, we see no abuse of the court's discretion in allowing the government to reopen its case to present evidence inadvertently omitted from the case in chief.

Carter next contends that the search of the van with the resultant seizure of the pistol violated the rights afforded him by the Fourth Amendment, and that, accordingly, the gun should have been excluded from evidence at trial. In light of the consent to search, given by the owner of the van, we decline to so rule.

Searches undertaken with the consent of one with dominion over the property are a well recognized exception to the warrant requirements of the Fourth Amendment. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The police, even if there is both the time and opportunity to obtain a warrant, may conduct a legal search with no more than the consent of the proper party.

Here, the consent was not given by the defendant but "when the prosecution seeks to justify a warrantless search by proof of a voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, at p. 171, [94 S.Ct. 988, at p. 993, 39 L.Ed.2d 242] (1973). Common authority is not implied from a mere property interest, but on mutual use so that it is reasonable to recognize that a co-user had the right to permit the inspection and that the individual affected has assumed

---

1. The written consent was obtained after a search of Carter's home, under a search warrant, failed to produce any money from the robbery.

2. The court had made no express ruling on admissibility of the statements made about the gun after it was found in the truck, but, when

reminded of that by counsel for the defendant, stated that it thought it had overruled the motions to suppress.

3. The evidence of interstate movement consisted of showing that the gun was manufactured in Connecticut and had been transported to Alaska and, from there, to Maryland.

**804**

the risk that the other might consent to a search. *Id.*, at n. 7.

■ While we recognize the fact that Escann owned the truck [4] may not be alone sufficient ground to justify his consent to the search, we nevertheless cannot ignore it, for his ownership is the basis of the relationship between him and the defendant. Because of that relationship, Carter could not expect to use the vehicle free from inspection by either his employer or by the police acting with his employer's consent.

Carter was assigned the truck for use in the performance of his duties as an employee of the Calvert Oil Company. Escann, as owner of the business, could tell Carter what he could do, or what he could not do, with the company's vehicle. Even though he was allowed to take the truck home at night, Carter was not authorized to use the truck for any purpose unconnected with the business. Moreover, Escann, at his caprice, could reassign the van to another employee. Clearly, the defendant used the vehicle solely at the owner's sufferance.

We see no distinction helpful to the defendant between the relationship here and the one involved in *United States v. Peterson*, 524 F.2d 167 (4th Cir. 1975), cert. den., 423 U.S. 1088, 96 S.Ct. 881, 47 L.Ed.2d 99 (1976). In that case, the defendant's mother consented to the search of his room which was located in her house. This court observed that no one disputed that the mother still retained "control" over the house and retained the ability and the right to "designate what use, if any," could be made of the room by Peterson. 524 F.2d at 178. Accordingly, we said her acquiescence was a constitutionally valid consent, and quoted with approval the language of *Maxwell v. Stephens*, 348 F.2d 325 (8th Cir.), cert. den., 382 U.S. 944, 86 S.Ct. 387, 15 L.Ed.2d 353, reh. den., 382 U.S. 1000, 86 S.Ct. 532, 15 L.Ed.2d 490 (1965), that those facts stood in contrast to the hotel or rental situations, such as *Stoner v. California*, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964). In our view, the present case provides an equally great contrast to those cases. Escann's ownership and dominion over the vehicle is underscored by his ability to designate its use and users. Therefore, "every circumstance points inescapably to the conclusion that the searching officers acted in perfect good faith in relying on the authority" of the owner of the vehicle. *Peterson*, 524 F.2d at p. 180.

■ Carter argues, however, that, even if Escann could consent to the search of the truck, his consent could not extend to the search of any property belonging to Carter, such as the coat liner containing the gun found in the truck. This argument fails to account for the fact that the evidence revealed by the third party consensual search in *Matlock* was discovered in a diaper bag in a closet, 415 U.S. at p. 166, 94 S.Ct. 988; in *United States v. Boston*, 508 F.2d 1171 (2d Cir. 1974), cert. den. 421 U.S. 1001, 95 S.Ct. 2401, 44 L.Ed.2d 669 (1975), in suitcases; and in *United States v. Green*, 523 F.2d 968 (9th Cir. 1975), in packages wrapped in brown paper. Moreover, we believe Carter's argument to be answered by *United States v. Buckles*, 495 F.2d 1377 (8th Cir. 1974), a case at least as favorable on its facts to the defendant as the one now before us. There, in a case in which a woman consented to the search of her home, the police found jackets belonging to the defendants, and the woman disclaimed ownership of them. When a search of the jackets revealed probative evidence, the Eighth Circuit rejected the contention that she could not consent to a search of the jackets, which were the personal property of the defendants, even though she disclaimed ownership of them. *Id.*, at p. 1382, citing *Maxwell v. Stephens*, supra, at pp. 337–38. In that case, as here, the authority to consent to the search of the personal items was upheld because they were items which freely came into the hands of the authorities by one who had the right to make them availa-

---

4. The title to the truck was in Calvert Oil Company. Escann was the sole owner of the business.

ble to them. Accordingly, we are of opinion the removal of the gun from the coat liner did not violate the Fourth Amendment, for we believe it was reasonable to recognize that Escann had the right to permit inspection and that Carter had assumed the risk that Escann might so do.

Finally, Carter attacks, on two grounds, the use at trial of his inculpatory statements. In light of our ruling that the search of the van was constitutional, the first ground, that the statement was the fruit of an illegal search, need not be reached. The second objection is that the court never made a finding that the proffered statement was voluntary. See *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

 While the record reveals that the district court did fail to expressly make that finding, we note that, at trial, the defendant renewed his objection to the admission of the statements, pointing out to the court that it had not ruled on the admissibility of the confession following the suppression hearing. The court responded by stating that it thought it had overruled all the motions to suppress; it then allowed the statement to be admitted into evidence. We are of opinion that such action was sufficient. The defendant was afforded a pre-trial suppression hearing, and the district court ruled, at the instance of the defendant, on the statements' admissibility. Although the court did not speak in terms to the voluntariness of the confession, voluntariness was a necessary condition of admissibility. Especially in a trial to the court in which everyone obviously knew what the issue was because the ground of objection was specifically stated to be that raised by the motion to suppress, we find no reason to reverse in the mere failure to say that the statements were voluntary when the court otherwise ruled them admissible and specifically overruled the objection to admitting them.

The judgment of the district court is accordingly

*AFFIRMED.*