Walton Leroy **HALL**, Appellant,

v.

The **STATE** of Texas, Appellee.

Nos. 65831 to 65833.

Court of Criminal Appeals of Texas, En Banc.

Jan. 12, 1983.

Douglas H. Parks, Dallas, for appellant.

Henry Wade, Dist. Atty. and Jeffrey B. Keck, R.R. Smith and Andy Anderson, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION

TOM G. DAVIS, Judge.

Appeals are taken from convictions of sexual abuse, sexual abuse of a child younger than seventeen years and indecency with a child younger than seventeen years. In a consolidated trial, punishments were assessed by the jury at twenty years in each of the sexual abuse causes and at ten years in the indecency with a child case.

The complaining witnesses (two daughters and a son) lived with their father, the appellant herein. The sufficiency of the evidence to support the conviction is not challenged.

At the outset appellant contends that "the trial court erred in admitting over appellant's timely objection evidence of a search of appellant's home and the fruits thereof, without warrant, when there was no evidence that consent was freely and voluntarily given."

Richard Dickey, a friend and business associate of the appellant, testified that following appellant's arrest, the appellant called him from the jail in Irving and asked him to get "everything out" of the rented house where he and the children lived. Pursuant to such call Dickey and his wife went to appellant's house to undertake such task. Dickey related that he did not "remember any restriction placed upon what I did with it" and that he sold some of the items taken from the house. The appellant's children had earlier been taken to a detention center. While Dickey and his

wife were in the course of removing furniture, personal articles and property which belonged to the appellant and Dickey's joint venture from the house, a "welfare worker" came for the children's clothes.

The subjects of the motion to suppress are a whip and eight paperback books dealing with sexually explicit subjects. One of the daughters testified that appellant used a rubber strap to hit her. The older daughter identified the books as ones that appellant "was reading as I was performing sexual acts on him." The son testified that appellant showed him books "of men having inter-sex with each other."

Dickey and his wife testified that the whip was taken from a closet by them and that the books were among some two hundred paperbacks, mostly on scientific subjects, that they found in the house. The testimony of Mrs. Dickey reflects that she had a key to appellant's house and had gone there on a regular basis prior to appellant's arrest to help care for the children and "pick up clothes, and that sort of thing for him."

As to when the whip and books in question were given to the welfare worker or other authorities appears to be in conflict. Dickey related that they gave the whip to the welfare worker and that they later turned the books over to the Irving Police Department. Mrs. Dickey testified that she removed the whip from the closet and gave it to the welfare worker, Cynthia Hart. At one point in her testimony she stated that she gave the books in question to Hart at the time she came after the clothes and at another point in her testimony she related that "some of the books" were taken at a subsequent date to "Officer Roberts of the Irving Police Department." She gave the books to Hart because she "thought it would be helpful in the prosecution of the case."

■ Where a search is conducted by a private individual, the search will be subject to constitutional guarantees when the individual conducting the search can be regarded as acting as an agent or an instrument of the State "in light of all the circumstances of the case." *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). In the instant case, as in *Coolidge,* there is no showing that the Dickeys were induced to search for evidence by the police. On the contrary, they were recovering articles from appellant's house at his request.

In *People v. Heflin,* 71 Ill.2d 525, 17 Ill. Dec. 786, 376 N.E.2d 1367 (1978), the Supreme Court of Illinois upheld a search under circumstances similar to the instant case. In *Heflin,* the defendant's brother was asked by the police (after the defendant's arrest) to give them love letters exchanged by the defendant and the homicide victim's wife. Shortly thereafter, and at the defendant's request, the brother picked up all of the defendant's personal belongings and took them to his house. The brother told the defendant's lawyer about the letters and the fact that the police wanted to see them. The lawyer advised the brother that he would like to see them and that he did not have to give them to the police. The brother in response to a subsequent call from the police mailed all of the letters in question to the police.

The Illinois Supreme Court concluded that there was "common authority" over the letters as the term is defined in *U.S. v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). In *Matlock,* the United States Supreme Court noted that common authority is not to be implied from a mere property interest, but rests on mutual use of the property by persons generally having joint access or control for most purposes, so that each has a right to permit inspection in his own right and the other has assumed the risk thereof. In *Heflin,* it was concluded that the defendant and his brother had joint access and control of the letters for most purposes, and that the brother had the right to permit the inspection by the police. The defendant assumed the risk that the brother may have permitted such inspection.

■ As heretofore noted, the articles in the instant case were seized or taken by the

Dickeys at appellant's request. There is no showing that any agent of the State asked for the evidence. On the contrary, Mrs. Dickey at her own instance appears to have given the books and the whip to the welfare worker. We find that the Dickeys and appellant had "common authority" over the articles in question. We conclude that the trial court was not in error in denying appellant's motion to suppress.

Appellant contends the court erred in failing to grant his motion for mistrial because of the prejudicial jury argument of the prosecutor.

Appellant complains of the prosecutor's argument that the son had learned about oral sex from his father (the appellant). We find ample testimony to support the conclusion that this was a reasonable deduction from the evidence. Further, the court sustained the objection and instructed the jury to disregard. See *Todd v. State,* 598 S.W.2d 286; *Johnson v. State,* 583 S.W.2d 399.

Appellant further complains of the court's failure to sustain his motion for mistrial following an argument by the prosecutor as follows:

> "Look at the crime that you're setting punishment for. It's a crime that, its a reasonable deduction from the evidence, that the injury and the damage inflicted by this man, if it ever fully comes out, will be a long, long time coming. It will never leave those kids ever."

The appellant's objection to the argument was sustained, and the jury was instructed to disregard.

Both of the female children testified that appellant forced them to commit oral sodomy on him. The older daughter stated that appellant also made her fondle his private parts and at the age of fourteen began having sexual intercourse with her. The son testified that appellant showed him books containing pictures of people performing homosexual acts and that he was forced by appellant to "masturbate him" (appellant).

We find the prosecutor's argument to be a proper plea for law enforcement. We further note that appellant's objection was sustained and the jury instructed to disregard. No error is shown.

The judgments are affirmed.

CLINTON, TEAGUE and MILLER, JJ., concur in results.