Raymond Dominic **BRACKENS**,
Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–07–00827–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 17, 2009.

Discretionary Review Refused
April 28, 2010.

Eric J. Davis, Jacquelyn Raechelle Carpenter, Davis & Associates, PLLC, Houston, TX, for Appellant.

Charles A. Rosenthal, Jr., District Attorney–Harris County, Donald W. Rogers Jr., Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Justices JENNINGS, KEYES, and HIGLEY.

1. *See* Tex. Penal Code Ann § 43.26 (Vernon 2003).

## OPINION

TERRY JENNINGS, Justice.

After the trial court denied his motion to suppress evidence, appellant, Raymond Dominic Brackens, pleaded guilty to the offense of possession of child pornography.[1] Pursuant to appellant's plea agreement with the State, the trial court deferred adjudication of appellant's guilt, placed him on community supervision for five years, and imposed a fine of $500. In four issues, appellant contends that the trial court erred in concluding that he had "failed to manifest a reasonable expectation of privacy in his computer files," the "warrantless search by law enforcement agents beyond the scope of a private search was not per se unreasonable," the "computer technician had the authority to consent to the search of appellant's computer," and article 38.23 of the Texas Code of Criminal Procedure was "inapplicable."[2]

We affirm.

### Factual and Procedural Background

In his motion to suppress evidence, appellant asserted that, on July 26, 2006, he took his laptop computer to a Circuit City store for "simple data migration" and provided an external hard drive to effectuate this request. Appellant instructed Circuit City to "backup all music, videos, and photos" under his profile "as well as folder desktop files located on the desktop" and explained that he did not need computer repairs because the computer was under warranty. He asserted that he "was not informed and did not consent to the opening of any files in order to effectuate the transfer of data from the computer hard drive to the external drive," and, "with a data transfer, there is no need to open

2. Tex.Code Crim. Proc. Ann. art. 38.23 (Vernon 2005).

files to make the transfer." Appellant alleged that, in violation of Circuit City's policies, Mark Legg, a Circuit City computer technician, opened and viewed appellant's computer files containing child pornography and then notified law enforcement authorities, who came to the Circuit City and examined and seized the computer. Appellant contended that the evidence resulting from Legg's illegal breach of appellant's computer security should be suppressed.

At the hearing on the motion to suppress evidence, Legg testified that on July 30, 2006, he received a work order to perform a "data migration" on appellant's laptop computer. The work order contained instructions to "back up all music, video, and photos" and desktop files from appellant's laptop to an external hard drive. Legg, who had not personally spoken with appellant, explained that, to perform the requested data migration, he would have "normally hooked up the external hard drive to the laptop and just copied it over." However, because "the USB ports on the laptop were non-functional," he "had to copy it to a DVD" to ultimately load the files "into the store computer which had the external hard drive connected to it." While performing the data migration as part of his "regular" job, Legg "came across the folder" entitled "My Shared Folder" to download onto the DVD. Legg explained that because the "My Shared Folder" was itself "too large to fit on a DVD," he had to open the folder and copy every file "individually." As he was "selecting the files" from the My Shared Folder and "dragging them to the DVD, [he] came across" a file or files with a title that contained references to a "14 year-old'" and "Pedo," which Legg understood be short for pedophile or pedophilia. Legg's concerns were also based on the fact that the questionable file or files were linked to a program well known for down-

loading pornography. Legg maintained that in order to carry out the customer's instructions to back up the music, videos, and photos, he had to open up the My Shared Folder.

Legg further testified that because Circuit City store policy prohibited employees from backing up "anything that might be illegal," he opened the "14–year old" or "Pedo" file to confirm that it was not illegal. When Legg double clicked on the file, which was not password protected or locked, he saw an image of an adult male having intercourse with an underage female child. Once Legg verified that this file contained illegal data, he stopped what he was doing and informed his manager, Israel Bautista. Legg noted that multiple other files in the My Shared Folder had titles indicating that they also likely contained child pornography.

Legg agreed that it was Circuit City's standard operating procedure to open files during a data migration only if a file is of questionable content or "could have something illegal in it" and, generally, files are not opened in this process. When asked if Circuit City explained this policy to customers before it accepted their work, Legg noted that Circuit City's own work orders stated that the customer agreed to "all policies." Legg opined that although the specific policy described above was not on the work order, it was the customers' responsibility to make themselves aware of the policies. Legg further agreed that appellant's signature did not appear in the space for the customer's signature on the work order form.

After Legg informed his manager of his discovery, someone at the Circuit City store notified the Houston Police Department ("HPD"), and a HPD patrol officer came to the store. The patrol officer first asked Legg to open the file that Legg had

viewed and then asked Legg to "go through every video on the computer that could be underage children." Legg estimated that he opened nine additional files containing child pornography for the police officer.

Bautista testified that after Legg had informed him that he had discovered a file containing child pornography on appellant's laptop, he contacted his service manager and was instructed to notify law enforcement authorities and to quarantine the laptop. When the HPD patrol officer arrived, Bautista and Legg showed the patrol officer where the files were located, and then the patrol officer asked them to play one of the video files. Bautista recalled seeing an additional "two to three" of the video files containing child pornography in the officer's presence. Bautista explained that he, Legg, and the patrol officer saw "quite a few" other file names indicating that they also contained child pornography, but they only viewed "the first few of them."

When asked about Circuit City's privacy policies, Bautista stated that Circuit City employees are not allowed to open a file or folder unless specifically instructed by the customer. However, Bautista explained that Legg had not violated the policy because Circuit City also had a policy prohibiting its employees from backing up anything illegal and a technician would have to open a suspect file to confirm that it was not illegal. If Legg had copied the suspect file without confirming that it was not illegal, Legg would have been in violation of Circuit City policy.

HPD Officer Barnes testified that he was assigned to investigate the case on July 31, 2006, the day after the HPD patrol officer had visited the Circuit City store. Barnes stated that, upon being as-

signed the case, he prepared a search warrant, which stated,

> On July 26, 2006, defendant brought his computer to Circuit City. This was a laptop computer described as a Compaq Computer Model No: V203US; Serial No: CNF4461126. Circuit City has the computer. Defendant, Raymond Brackens, brought the computer in for Circuit City to be fixed. Circuit City found numerous videos labeled "PEDO." The technician, Mark Leg [sic], stated that what he saw was at least 10 videos of female children ages ranging from 9–11 years old performing oral and vaginal sex with adult males. The file name where the pornographic images were observed were under the defendant's name. The technician immediately called HPD to come view the computer. A patrol officer came to Circuit City and viewed the pornographic images. After viewing the images, the patrol officer took custody of the computer and put the computer in the HPD property room. The computer is currently in custody of HPD.

After obtaining the warrant, Barnes took appellant's laptop from the HPD property room to another officer, a computer specialist, who conducted digital forensic analysis of the laptop. The analysis revealed that the laptop contained thirteen video files and two photo files containing child pornography. Eight of the files containing child pornography were accessed on July 30, 2006, the date the first HPD patrol officer visited the Circuit City store. An additional five files containing child pornography had not been accessed on or after that date. Based upon this analysis, Barnes concluded that, on July 30, 2006, the HPD officer who was first called to the Circuit City store had viewed only some of the files containing child pornography that

were contained on appellant's laptop.[3]

Kevin Jordan, a computer forensic analyst and appellant's expert witness, testified that he has never had to open files in performing data migrations. He also stated that Barnes's testimony regarding the dates that the files in question had been accessed could be accurate "assuming that the file system's time can be trusted and there is nothing been done to modify the times purposefully."

At the conclusion of the motion to suppress evidence hearing, the trial court concluded that Legg "was not an agent of law enforcement, and that his viewing of the file he testified to was a regular part of copying the data with regard to the data migration." It found that appellant consented to Legg performing "the data migration" and Legg had to open the files to perform appellant's work request. The trial court denied appellant's motion to suppress evidence on the ground that Legg had violated "Texas Penal Code section 33.02[4] in opening the computer file." After appellant asked whether the trial court was denying his motion to suppress evidence "on the basis of the warrantless search," the trial court, citing *Rogers v. State*, 113 S.W.3d 452 (Tex.App.-San Antonio 2003, no pet.), responded, "I do." The trial court did not provide any further oral or written findings or conclusions, and the parties did not ask for any additional findings or conclusions.

## Standard of Review

We review a ruling on a motion to suppress for an abuse of discretion. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex.Crim. App.2008). We give almost total deference to a trial court's determination of historical facts, especially if those determinations turn on witness credibility or demeanor, and review de novo the trial court's application of the law to facts. *Neal v. State*, 256 S.W.3d 264, 281 (Tex.Crim.App.2008). At the suppression hearing, the trial court is the sole and exclusive trier of fact and judge of the witnesses' credibility. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim.App.2002). Accordingly, the trial court may choose to believe or to disbelieve all or any part of the witnesses' testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App.2000). Unless the trial court abuses its discretion by making a finding unsupported by the record, we defer to the trial court's findings of fact and will not disturb them on appeal. *Flores v. State*, 177 S.W.3d 8, 13–14 (Tex.App.-Houston [1st Dist.] 2005, pet. ref'd). When the trial court fails to make explicit findings of fact, we imply fact findings that support the trial court's ruling so long as the evidence supports these implied findings.[5] *Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex.Crim.App.2007).

## Motion to Suppress Evidence

In four issues, appellant argues that the trial court erred in denying his motion to

---

**3.** Testimony revealed that the files accessed on July 30, 2006 included those titled (1) "16Y slut, reelkiddy, one word, prn kiddy.mgpe"; (2) "Izzy2.mp"; (3) "kiddy-baby.mpeg"; (4) "Kiddy Vanessa 12 years, 36.- mpeg"; (5) "Pedo 10-YO pussy.mpg"; (6) "Pedo–Vicky–doudu.mpeg"; (7) "Pedo Mff—suck.mpg"; and (8) "vicky string bikini, p thc., 11 year-old mpg." The additional video files were titled (1) "Lolita sex 0002 little preteen"; (2) "Lolita Network Camille"; (3) "pedo underage 12.mpeg"; (4) "Porn—Japa-

nese Lolita Rape"; and (5) "R ampersand Y gold preteen suck."

**4.** TEX. PENAL CODE ANN. § 33.02 (Vernon Supp. 2008).

**5.** Appellant and the State do not directly address whether the trial court's oral findings should be considered explicit findings. Both appear to ask us to consider the trial court's implied findings.

suppress evidence because he "manifest[ed] a reasonable expectation of privacy in his computer files," the "warrantless search by law enforcement agents" went beyond the scope of a private search and was "per se unreasonable," Legg did not have authority to consent to "the search of appellant's computer," and Legg, by opening appellant's computer file, committed the offense of breach of computer security. *See* TEX. PENAL CODE ANN. § 33.02 (Vernon 2003).

■■■ The Fourth Amendment of the United States Constitution and article I, section 9 of the Texas Constitution protect against unreasonable searches and seizures. U.S. CONST. amend. IV; TEX. CONST. art. I, § 19; *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App.1996). The well-established rule, subject to a few specifically established and delineated exceptions, is that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment." *United States v. Ross*, 456 U.S. 798, 825, 102 S.Ct. 2157, 2173, 72 L.Ed.2d 572 (1982) (citations omitted). The Fourth Amendment protection afforded to closed computer files and hard drives is similar to the protection afforded to a person's closed containers and closed personal effects. *United States v. Barth*, 26 F.Supp.2d 929, 936 (W.D.Tex.1998).

■■■ In regard to appellant's first issue, we note that one does not necessarily lose one's reasonable expectation of privacy in one's closed computer files by handing one's computer over to a computer technician. *See id.* at 937. However, a private party search can destroy an individual's reasonable expectation of privacy if the individual's conduct or activity or the circumstances of the situation significantly lessen the defendant's reasonable expectation of privacy by creating a reasonably foreseeable risk of intrusion by private parties. *Id.* In such a situation, any subsequent law enforcement search must be limited in scope to the private party's legitimate search. *Id.*

■■■ Here, appellant took his laptop computer to a Circuit City store to have a technician back up his video and photographic files onto an external hard drive. Appellant did not place any limitation on his request to back up these files, and the USB ports on the laptop did not function. Legg testified that in order to fulfill appellant's request to migrate the data onto an external hard drive, he had to copy the files in appellant's My Shared Folder onto a DVD to ultimately load the files "into the store computer which had the external hard drive connected to it." Once he saw the suspect name "Pedo" on one of the files, Legg had to open the file to confirm that it was not illegal. We hold that, under these circumstances, appellant's request to back up his video and photographs, without any limitation on how to effectuate the request, created a reasonably foreseeable risk of intrusion by Legg.[6] *See id.* Moreover, because Legg was a private party not acting as a "government actor" at the time he opened the first file containing child pornography, the Fourth Amendment was not implicated. *Id.* at 935.

We overrule appellant's first issue.

---

**6.** *See Zaratti v. State*, No. 01–04–01019–CR, 2006 WL 2506899, at *8–9 (Tex.App.-Houston [1st Dist.] Aug. 31, 2006, pet. ref'd) (memo op., not designated for publication). In *Zaratti*, police officers, based upon information received from a computer technician, properly obtained a search warrant before searching for illegal content on the defendant's computer. *Id.* at *2.

■ However, in regard to appellant's second issue, the Fourth Amendment and article I, section 9 of the Texas Constitution were implicated when the HPD patrol officer first arrived at the Circuit City store and, without a search warrant, asked Legg to search further through appellant's computer files and show him other images, conduct that exceeded the scope of Legg's initial private-party search. *Id.* at 937 (noting that subsequent police search must be "limited in scope to the private party's search"). Legg's testimony reveals that, although he located and opened the first pornographic image while performing a data migration using Circuit City's standard operating procedures, he immediately ceased the data migration upon confirming that the laptop contained child pornography. Legg's subsequent viewing of the videos and images was done at the instruction of the HPD patrol officer. This warrantless search was per se unreasonable under the Fourth Amendment and under article I, section 9 of the Texas Constitution.[7] *Id.; see also Brimage v. State,* 918 S.W.2d 466, 500 (Tex.Crim.App.1994).

■ Nevertheless, even though the patrol officer's search of the additional files was unreasonable, Officer Barnes subsequently obtained a search warrant based primarily upon Legg's observations prior to the patrol officer's instructions to search for additional pornographic files on the laptop. "When a search warrant is issued on the basis of an affidavit containing unlawfully obtained information, the evidence seized under the warrant is admissible only if the warrant clearly could have been issued on the basis of the untainted information in the affidavit." *Pitonyak v. State,* 253 S.W.3d 834, 848 (Tex.App.-Austin 2008, pet. ref'd) (citing *Brown v. State,* 605 S.W.2d 572, 577 (Tex.Crim.App.1980)). "If the tainted information was clearly unnecessary to establish probable cause for the search warrant, then the defendant could not have been harmed by the inclusion of the tainted information in the affidavit." *Id.* (citing *Castillo v. State,* 818 S.W.2d 803, 805 (Tex.Crim.App.1991), *overruled on other grounds, Torres v. State,* 182 S.W.3d 899, 901–02 (Tex.Crim.App.2005)); *see also State v. Bridges,* 977 S.W.2d 628, 632 (Tex.App.-Houston [14th Dist.] 1998, no pet.) (stating that "relevant inquiry into probable cause based upon a tainted affidavit is to put aside the tainted allegations and determine whether the independently acquired and lawful information clearly established probable cause" and that "[i]f the search warrant could have been issued based on the untainted information in the affidavit, then the search warrant is valid").

■ Here, even appellant agreed in the trial court that Officer Barnes had probable cause to obtain a search warrant based upon Legg's initial observations of his computer files.[8] Setting aside the information in the affidavit related to the HPD patrol officer's warrantless search, we hold that the remaining portion of the affidavit

---

**7.** The State, citing *Rogers v. State,* 113 S.W.3d 452 (Tex.App.-San Antonio 2003, no pet.), argues that the patrol officer's search did not implicate the Fourth Amendment and article I, section 9 of the Texas Constitution because appellant did not have a reasonable expectation of privacy in his computer files. However, the factual sequence as to when the police officer in *Rogers* obtained a search warrant is not clear. *See id.* at 455. Moreover, nothing in *Rogers* indicates that the police officer there conducted a warrantless search that exceeded the scope of the conduct of the computer technician. *Id.* In *Rogers,* as in our case, the police officers obtained a search warrant prior to conducting a forensic analysis of the computer. *Id.*

**8.** Appellant challenges Legg's actual viewing of the original video on separate state grounds that we address below.

independently provided probable cause for the subsequent search of appellant's laptop computer, during which all the video and photographic files containing child pornography were located.[9] *See id.*

We overrule appellant's second issue.

In his fourth issue, appellant specifically argues that because Legg violated Texas Penal Code section 33.02 in opening the "Pedo" file, all of the files should be excluded from evidence. *See* TEX.CODE CRIM. PROC. ANN. art. 38.32(a). Article 38.23(a) provides that "[n]o evidence obtained by an officer *or other person* in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." *Id.* (emphasis added). Section 33.02 of the Texas Penal Code prohibits a person from knowingly accessing a computer without the "effective consent" of the owner. *See* TEX. PENAL CODE ANN. § 33.02(a) (Vernon 2003). Appellant asserts that Legg was not authorized to view any files on his laptop.

 However, as noted above, appellant did not place any limitations on his request to back up his computer files. In order to fulfill appellant's request, Legg had to copy appellant's files onto a DVD to ultimately load the files "into the store computer which had the external hard drive connected to it." Once he saw the suspect "Pedo" file, Legg had to open it to confirm that it was not illegal. The testimony from Legg and Bautista supports an im-

plied finding that appellant's computer files were accessed in the course of carrying out appellant's work order. Accordingly, we hold that the trial court did not err in concluding that Legg did not violate section 33.02.

We overrule appellant's fourth issue.

We hold that the trial court did not err in denying appellant's motion to suppress evidence.

## Conclusion

We affirm the judgment of the trial court.

Justice KEYES, concurring.

EVELYN V. KEYES, Justice, concurring.

I join the majority's opinion except to the extent the majority holds that Legg's opening, at the direction of police, files he had previously uncovered in the "My Shared Documents" folder on appellant's computer was "per se unreasonable under the Fourth Amendment and under article I, section 9 of the Texas Constitution" and therefore constitutional error. *See* Op. at 838. I agree with the majority that Legg was not acting as a state actor and did not violate appellant's expectation of privacy under the Fourth Amendment when he initially opened the "My Shared Documents" folder in the course of performing appellant's requested computer data transfer, discovered a number of files with labels indicating they contained child pornography, and opened one of them.[1] I also

---

9. Having so held, we need not address appellant's third issue, in which he argues that the trial court abused its discretion in finding that the "computer technician had the authority to consent to the search of appellant's computer."

1. Legg did not recall the exact name of the file he initially opened in the "My Shared

Documents" folder at the time of the suppression hearing over a year later. The files he discovered during that initial search and was asked to open by the police before a search warrant was obtained included (1) "16Y slut, reelkiddy, one word, prn kiddy.mgpe;" (2) "Izzy2.mp;" (3) "kiddy-baby.mpeg;" (4) "Kiddy Vanessa 12 years, 36.mpeg;" (5) "Pedo 10–

agree that he was acting under the direction of the police when he opened the additional pornographic files he had originally discovered in plain view in his initial search of the "My Shared Documents" folder. I further agree that a "subsequent police search must be 'limited in scope to the private party's search.'" Op. at 838. I disagree, however, with the majority's conclusion that Legg's search at the direction of police of files with pornographic titles in the "My Shared Documents" folder that were in plain view after Legg initially opened the folder exceeded the scope of the initial private search and violated appellant's constitutional right to privacy.

Legg opened the file labeled "14-year old" to confirm that it contained child pornography because the file was "linked to a program that is very well known for downloading pornographic material." He discovered the image of an adult male in sexual congress with an underage female. Legg immediately closed the image and alerted his supervisor, Israel Bautista. Bautista contacted his supervisor, who instructed Bautista to contact the Houston Police Department ("HPD"). Bautista called the police and quarantined the computer in the store's cash office. An HPD police officer came to Circuit City within twenty minutes of Bautista's call. After arriving on the scene, the officer requested that Legg retrieve the computer and open the file containing the child pornography that he had previously opened. After the police officer viewed the original image, he asked Legg to open additional files in the same folder with the titles (1) "16Y slut, reelkiddy, one word, prn kiddy.mgpe"; (2)

"Izzy2.mp"; (3) "kiddy-baby.mpeg"; (4) "Kiddy Vanessa 12 years, 36.mpeg"; (5) "Pedo 10-YO pussy.mpg"; (6) "Pedo-Vicky-doudu.mpeg"; (7) "Pedo Mff—suck. mpg"; and (8) "vicky string bikini, p thc., 11 year-old mpg." Legg then left the room and Bautista and the officer viewed eight of the nine additional images. The police officer seized the computer and placed it in the HPD property room.

HPD officer John Barnes was assigned the investigation on July 30, 2006. He made out an affidavit to the magistrate judge as follows:

> On July 26, 2006, defendant brought his computer to Circuit City. This was a laptop computer described as a Compaq Computer Model No: V203US; Serial No: CNF4461126. Circuity [*sic*] City has the computer. Defendant, Raymond Brackens, brought the computer in for Circuity [*sic*] City to be fixed. Circuit City found numerous videos labeled "PEDO." The technician, Mark Leg [*sic*], stated that what he saw was at least 10 videos of female children ages ranging from 9–11 years old performing oral and vaginal sex with adult males. The file names where the pornographic images were observed were under the defendant's name. The technician immediately called HPD to come view the computer. A patrol officer came to Circuit City and viewed the pornographic images. After viewing the images, the patrol officer took custody of the computer and put the computer in the HPD property room. The computer is currently in [the] custody of HPD.

---

YO pussy.mpg;" (6) "Pedo-Vicky-doudu.mpeg;" (7) "Pedo Mff—suck.mpg;" and (8) "vicky string bikini, p thc., 11 year-old mpg." Additional video files opened by police after obtaining a search warrant included (1) "Lolita sex 0002 little preteen;" (2) "Lolita Net-

work Camille;" (3) "pedo underage 12.-mpeg;" (4) "Porn–Japanese Lolita Rape;" and (5) "R ampersand Y gold preteen suck." I use the title "14 year-old" for the file Legg initially viewed.

The magistrate judge issued the search warrant on August 1, 2006. After receiving the search warrant, Barnes took the computer from the HPD property room and transferred the computer to the HPD digital forensic lab. Barnes testified that thirteen illegal pornographic files were discovered.

Both the United States and Texas Constitutions protect an individual's legitimate expectation of privacy in the individual's home and personal effects from unreasonable government intrusion. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9; *see also Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App.1996) (citing *Richardson v. State*, 865 S.W.2d 944, 948 (Tex. Crim.App.1993)). Both the United States and Texas Constitutions protect the same rights against unreasonable government intrusion to the same degree. *Hulit v. State*, 982 S.W.2d 431, 436 (Tex.Crim.App. 1998); *Johnson v. State*, 912 S.W.2d 227, 232 (Tex.Crim.App.1995); *Garza v. State*, 137 S.W.3d 878, 884 (Tex.App.-Houston [1st Dist.] 2004, pet. ref'd).

Neither the Fourth Amendment nor the Texas Constitution, however, requires the exclusion of evidence obtained by a private party's search. *Cobb v. State*, 85 S.W.3d 258, 270–71 (Tex.Crim.App.2002). Only the activity of government agents implicates a person's Fourth Amendment rights. *United States v. Paige*, 136 F.3d 1012, 1017 (5th Cir.1998); *United States v. Barth*, 26 F.Supp.2d 929, 935 (W.D.Tex. 1998). Thus, when a private party conducts a warrantless search, the constitutional guarantee against unreasonable government intrusion is not implicated unless the private party acts as an agent of government agents. *Burdeau v. McDowell*, 256 U.S. 465, 475, 41 S.Ct. 574, 576, 65 L.Ed. 1048 (1921); *Cobb*, 85 S.W.3d at 270–71; *Hall v. State*, 643 S.W.2d 738, 740 (Tex.Crim.App.1983).

However, even if a private party does act as a governmental agent, a defendant has standing to complain that evidence was obtained by unreasonable governmental intrusion in violation of the Fourth amendment and the Texas Constitution and is therefore inadmissible only if he has a legitimate expectation of privacy in the place invaded. *Paige*, 136 F.3d at 1017; *Barth*, 26 F.Supp.2d at 936; *Villarreal*, 935 S.W.2d at 138; *Rogers v. State*, 113 S.W.3d 452, 457 (Tex.App.-San Antonio 2003, no pet.). "If the inspection by the police does not intrude upon a legitimate expectation of privacy, there is no 'search' subject to the [Fourth Amendment]." *Illinois v. Andreas*, 463 U.S. 765, 771, 103 S.Ct. 3319, 3324, 77 L.Ed.2d 1003 (1983).

The protection afforded closed personal computer files and hard drives has been likened to the protection afforded by the Fourth Amendment to a person's closed containers and closed personal effects. *See Barth*, 26 F.Supp.2d at 936–37; *Zaratti v. State*, No. 01–04–01019–CR, 2006 WL 2506899, at *8 (Tex.App.-Houston [1st Dist.] Aug. 31, 2006, pet. ref'd) (mem. op., not designated for publication). "[T]he Fourth Amendment provides protection to the owner of every container that conceals its contents from plain view." *United States v. Ross*, 456 U.S. 798, 822–23, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572 (1982); *Lown v. State*, 172 S.W.3d 753, 759 n. 5 (Tex.App.-Houston [14th Dist.] 2005, no. pet.). Thus, by placing data files in a storage device, such as a hard drive, a person manifests a reasonable expectation of privacy in the contents of those files. *Barth*, 26 F.Supp.2d at 936–37; *Lown*, 172 S.W.3d at 759–60. However, "the protection afforded by the Amendment varies in different settings." *Ross*, 456 U.S. at 823, 102 S.Ct. at 2172. An expectation of privacy in the contents of a container may not survive if government agents have proba-

ble cause to believe that the container contains contraband. *See id.* at 823, 102 S.Ct. at 2172 (expectation of privacy in automobile). In such a case, the scope of a warrantless search "is no narrower and no broader than the scope of search authorized by a warrant supported by probable cause." *Id.* Only the magistrate's prior approval is waived; otherwise, the search is "as the magistrate could authorize." *Id.* In *Andreas,* the United States Supreme Court held that once a container has been lawfully opened and found to a certainty to contain contraband—the container being, in that case, a sealed shipping container found to contain illicit drugs—the contraband becomes like objects physically within plain view of the police and the claim to privacy in the contents of the container is lost. *Andreas,* 463 U.S. at 771–72, 103 S.Ct. at 3324. The subsequent reopening of a container that has been lawfully opened and found to contain contraband is thus not a "search" within the meaning of the Fourteenth Amendment absent a substantial likelihood that the contents of the container have been changed. *Id.* at 772–73, 103 S.Ct. at 3325.

The question here, therefore, is whether appellant had a reasonable expectation of privacy against a governmental search of the contents of the folder labeled "My Shared Documents" once Legg had lawfully opened the folder during the course of the data migration requested by appellant and discovered a number of files with names indicative of child pornography. I would hold that he did not.

The opening of the folder resulted in Legg's discovery of illegal pornography in plain view in the form of numerous video files labeled "PEDO," including the file labeled "14 year-old girl," which he opened. *See Andreas,* 463 U.S. at 771–72, 103 S.Ct. at 3324. No additional files were

opened, and the police were alerted without delay. *See id.,* 103 S.Ct. at 3324. There is no indication that the contents of the folder were changed between the time Legg discovered the contraband and the time the police were called and directed his inspection of the contents of other files with similar names, and the evidence is to the contrary. *See id.* at 772–73, 103 S.Ct. at 3325. When Legg reopened the folder labeled "My Shared Folder" at the direction of police, the video files in the folder with names indicating they contained pornographic material were again in plain view. *See id.*

I would hold that once the police had Legg open the folder labeled "My Shared Documents" and the "14–year–old" file and saw the additional files with titles indicative of pornography in plain view in the opened folder, they had probable cause to believe the folder labeled "My Shared Folder" contained pornographic material and that they did not exceed the scope of the original lawful search by directing Legg to open the six additional files in the folder opened without a search warrant. Thus, I would hold that the police-directed warrantless search of the computer files in the folder labeled "My Shared Folder" was not a search of files in which appellant had a legitimate expectation of privacy and was not an illegal "search" under the Fourth Amendment or its Texas counterpart. *See Andreas,* 463 U.S. at 771, 103 S.Ct. at 3324 (once container has been opened and found to a certainty to contain contraband, contraband becomes like objects in plain view of police and claim to privacy is lost); *Ross,* 456 U.S. at 823, 102 S.Ct. at 2172 (expectation of privacy is lost if government agents have probable cause to believe container contains contraband).[2] Because appellant

---

**2.** The majority agrees that the police had

probable cause to obtain a search warrant

had no legitimate expectation of privacy in the contents of the folder at the time police directed a warrantless search of the six additional files, I would hold that the pornographic files inspected by police in their warrantless search of appellant's computer were not subject to exclusion under the Fourth Amendment of the United States Constitution or article I, section 9 of the Texas Constitution. Therefore, the trial court did not err in admitting them.

Like the majority, I would affirm the judgment of the trial court.

based on Legg's initial observations upon opening the "My Shared Documents" folder. However, the majority also holds that it was per se unreasonable for the officers to ask Legg to open additional files with titles indicative of pornography in plain view in the same folder because this search exceeded the scope of Legg's search. I find these positions inconsistent. That is the crux of our disagreement.