COURT OF APPEALS FOR THE
FIRST DISTRICT OF TEXAS AT HOUSTON



ORDER DENYING MOTION FOR REHEARING

Appellate case name:    *Terry Wayne King II v. The State of Texas*

Appellate case number: 01-19-00793-CR

Trial court case number:    1588183R

Trial court:                371st District Court of Tarrant County

The State has filed a motion for rehearing. Appellant, Terry Wayne King II, filed a response to the motion. For the reasons stated below, the motion for rehearing is **denied**.

At the suppression hearing, King stipulated that he was "an employee who drives [the] tractor-trailer . . . owned by John Feltman," and the parties generally referred to Feltman as King's "employer." In its motion for rehearing, the State contends that the third-party consent exception to the warrant requirement applied to the warrantless search by Feltman of the tractor-trailer (also referred to as a semi-truck). Feltman had searched the truck at the request of the police and, in our opinion, we concluded that Feltman had acted as an agent of the police at the time of the search. *See King v. State*, No. 01-19-00793-CR, — S.W.3d —, 2021 WL 4995217, at *28 (Tex. App.—Houston [1st Dist.] Oct. 28, 2021, no pet. h.).

Citing *Sharp v. State*, 707 S.W.2d 611, 617 (Tex. Crim. App. 1986), the State asserts in its rehearing motion: "A third party can consent to the search of property another person has an expectation of privacy in 'if they have control over and authority to use the premises being searched.'" The State points out that, "[w]hile third-party consent typically arises with searches involving shared homes and buildings, it is equally applicable to the search of automobiles." *See id.* The State also asserts that courts have "found that employers and owners of work vehicles have the requisite common authority over work vehicles to consent to their search." The State contends that, as the owner of the semi-truck and King's employer, Feltman had the right to consent to the search. The State cites four cases to support its assertion: (1) *Sharp*, 707 S.W2d at 617; (2) *Boyle v. State*, 820 S.W.2d 122, 143 (Tex. Crim. App. 1989) (op. on reh'g); (3) *U.S. v. Carter*, 569 F.2d 801, 804 (4th Cir.

1

1977); and (4) *Giroux v. State*, 2020 WL 4281950, No. 05-19-00189, at *7 (Tex. App.—Dallas July 27, 2020, no pet.) (mem. op., not designated for publication).

In its motion for rehearing, the State acknowledges that it did not raise the third-party consent exception in its appellee's brief, but it asserts that we should now consider the exception based on the "*Calloway* rule."[1] The *Calloway* rule requires that, on direct appeal, an appellant's claim of reversible error should be rejected if the trial court's ruling is correct "on any theory of law applicable to the case" even if "the trial court did not purport to rely on that theory" and the prevailing party did not explicitly raise the theory. *State v. Esparza*, 413 S.W.3d 81, 85–86 (Tex. Crim. App. 2013). As King points out in his response, courts should not apply the *Calloway* rule "when to do so would work a manifest injustice to the appellant." *See id.* at 89. "While a legal theory can support a trial court's ruling even if not explicitly raised or relied upon, the theory must in some basic way be 'a theory of law applicable to the case.'" *State v. Castanedanieto*, 607 S.W.3d 315, 327 (Tex. Crim. App. 2020). A legal theory is not applicable to the case if the appealing party did not have an adequate opportunity to develop a complete factual record with respect to the theory. *Id.* (citing at *Esparza*, 413 S.W.3d. at 90).

At the suppression hearing, the State asserted that King did not have standing to challenge the warrantless search because, at the time the search was conducted by Feltman on behalf of the State, King's privacy interest in the semi-truck had dissipated. The State also argued that King had abandoned the cell phone in the truck because he did not take any precautions to secure the phone when he was arrested. Although not argued in the trial court, the State asserted in its appellate brief that the trial court's denial of King's motion to suppress could be upheld based on the doctrine of attenuation of the taint. In our opinion, we rejected the State's arguments regarding standing and attenuation of the taint. *King*, 2021 WL 4995217, at *26–32.

The State now contends in its motion for rehearing that the third-party consent exception was sufficiently raised in the trial court to constitute a theory of law applicable to the case because the record showed that Feltman owned the semi-truck and employed King to drive it. As mentioned, the State cites four cases—*Sharp*, *Boyle*, *Carter*, and *Giroux*—to support the application of the third-party consent exception. However, rather than showing that the exception applied in this case, the facts of those cases—when compared to the evidence adduced in this case—show why the exception was not sufficiently raised in the trial court to constitute a theory of law applicable to the case.

In each of the four cited cases, express consent was given to the police by the defendant's employer, thereby permitting a warrantless search of the defendant's employer-owned work vehicle. *See Sharp*, 707 S.W.2d at 617 (appellant's work supervisor consented to search of appellant's work truck); *Boyle*, 820 S.W.2d at 129 (owner of trucking company,

---

[1]    *See Calloway v. State*, 743 S.W.2d 645, 651–52 (Tex. Crim. App. 1988).

which employed appellant, gave written consent to search appellant's work truck); *Carter*, 569 F.2d at 803 (appellant's employer gave written consent to search van belonging to employer and driven by appellant for work purposes); *Giroux*, 2020 WL 4281950, at *7 (appellant's employer gave permission over telephone to police to search appellant's work vehicle). In its rehearing motion, the State asserts that Feltman gave his consent to the police to search the semi-truck. And the State contends: "The fact that Feltman conducted the search of his truck at the request of Detective Henz does not undermine his consent." But, contrary to the State's assertion, the record does not show that Feltman expressly gave his consent to the police to search the truck.

Despite a lack of express consent, the State appears to take the position that, by acting as the State's agent in conducting the warrantless search, Feltman gave his implicit consent for the search. The State cites no Texas or federal case authority to support the proposition that someone can simultaneously give consent for a search and be the party conducting the search on behalf of police. Instead, the State cites *People v. Heflin*, 376 N.E.3d 1367, 1374 (Ill. 1978), a case distinguishable from the present case.

In *Heflin*, the defendant's brother was asked by the police (after the defendant's arrest) to give them love letters exchanged by the defendant and the homicide victim's wife. *Id.* at 1373. Shortly thereafter, and at the defendant's request, the brother picked up all of the defendant's personal belongings, including the letters, and took them to his house. *Id.* The brother told the defendant's lawyer about the letters and the fact that the police wanted to see them. *Id.* The lawyer "gave no specific orders not to turn them over." *Id.* The brother in response to another call from the police mailed all of the letters to the police. *Id.*

The Illinois Supreme Court held that the brother had "common authority" over the letters for purposes of third-party consent, thus the trial court had not erred in denying the defendant's motion to suppress the letters. *Id.* at 1375. The court explained that the brother had common authority over the letters because he had obtained possession of the defendant's car and his belongings at the defendant's request and "with the knowledge and consent of the defendant's attorney." *Id.* The court noted, "There were no instructions either from the defendant or from the attorney forbidding others to have access to the letters." *Id.* Here, unlike in *Heflin*, King did not request Feltman to take possession of his belongings or more specifically his cell phone. Instead, Feltman took possession of the cell phone at the request of the police.

In *Hall v. State*, the Court of Criminal Appeals cited *Heflin*, noting "the Supreme Court of Illinois upheld a search under circumstances similar to [*Hall*]." 643 S.W.2d 738, 740 (Tex. Crim. App. 1983). There, the defendant, Hall, had filed a motion to suppress the admission into evidence of a whip and eight sexually-explicit books belonging to him. *Id.* The record showed that, after he was arrested for sexually abusing his children, Hall had asked two friends to take "everything out" of the home he had been renting. *Id.* at 739. Among the items in the home subject to removal by the friends were the books and the whip. *Id.* at

740. The evidence showed that the friends voluntarily gave the whip and some books to a "welfare worker" who came to the home for the children's clothes and gave additional books belonging to Hall to the police. *Id.*

Ultimately, the Court of Criminal Appeals held that the trial court had not erred in denying Hall's motion to suppress. *Id.* at 741. The *Hall* court explained that it had reached its holding because the items that Hall had sought to suppress had been "seized or taken" by his friends at his request, and "[t]here was no showing that any agent of the State asked for the evidence." *Id.* That is, there was "no showing that [the friends] were induced to search for evidence" by the authorities. *Id.* at 740. "On the contrary, [one of the friends] at her own instance appears to have given the books and the whip to the welfare worker." *Id.* at 741. The court concluded that Hall's friends—who Hall had requested to take his belongings and who gave the belongings to the authorities on their own volition—had the "common authority" necessary to give the belongings to the welfare worker. *Id.* The key facts on which the *Hall* court affirmed the denial of the motion to suppress stand in contrast to the facts here. Unlike in *Hall*, King did not request that his cell phone be removed from the semi-truck by Feltman, and Feltman did not act on his own volition in seizing the cell phone. He did so at the direction of police. There is no evidence to the contrary.

Aside from the fact that Feltman did not give his express consent to the police permitting a warrantless search of the semi-truck and that he was acting as an agent of the State at the time he seized the cell phone, the present case also differs from the four cited cases—*Sharp*, *Boyle*, *Carter*, and *Giroux*—because in those cases, the State presented evidence showing that the defendant's employer had common authority over the work vehicle driven by the defendant sufficient to provide third-party consent to search it. For instance, in *Boyle*, the Court of Criminal Appeals explained on rehearing that the third-party consent given by the appellant's employer, Jewett Scott, to search the semi-truck driven by the appellant for work was a "valid and justified the search":

> The record clearly indicates that appellant was an employee of Scott, who was the owner of the truck in question. Appellant was assigned a specific truck to drive for the corporation, used a company credit card to pay for his fuel while on the road, and received his paychecks from the company. These facts indicate the supervisory authority and control that Jewett Scott, as owner of the trucking line, had over appellant and the truck he drove. The fact that appellant was allowed occasionally to park his rig at his residence in the evenings is not dispositive because appellant could only do so with company permission. As a result of this employment relationship, appellant could not "expect to use the [truck] free from inspection by either his employer or by the police acting with his employer's consent." *United States v. Carter*, 569 F.2d at 804.

> Based on the facts concerning the consent given that were narrated in the opinion on original submission, we conclude the State has adequately shown that the consent to search was obtained from a third party who possessed common authority over and a sufficient relationship to the vehicle sought to be inspected. Therefore, the search of the Peterbilt tractor-truck was legal.

*Boyle*, 820 S.W.2d at 143; *see Sharp*, 707 S.W.2d at 617 (holding that testimony of defendant's work supervisor showed that he had sufficient authority over defendant's work truck to consent to search because he "had unconditional authority to assign or reassign trucks to all the tool pushers under his supervision"); *Carter*, 569 F.2d at 804 (holding that evidence was sufficient to establish that defendant's employer could consent to search of defendant's work truck where employer owned the truck, had assigned truck to defendant, could "at [employer's] caprice" reassign vehicle to another employee, and did not authorize defendant to use the truck for non-work purposes, even though defendant was permitted to take truck home at night); *Giroux*, 2020 WL 4281950, at *7 (holding that employer had sufficient authority over defendant's work truck to consent to search because evidence showed that, when he was stopped by police for missing license plate, defendant called employer regarding the stop; police spoke to employer during call, and employer acknowledged that he was responsible for remedying license-plate issue and made other statements to police asserting authority over the vehicle).

Unlike the cited cases, here, the State did not offer evidence showing the level of control that Feltman had over the truck at the time of the search beyond his ownership of the vehicle. The case law is clear that ownership alone is not enough to establish sufficient authority for a third party to provide consent. *See Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002) ("Nor is a legal property interest dispositive in determining whether a third party has the authority to consent to a search; common authority derives from the mutual use of the property, not the ownership or lack thereof.").

At the hearing on the motion to suppress, the State informed the trial court that Feltman had been scheduled to testify at the hearing that day but was unable to attend due to child-care issues. The State indicated that Feltman could attend the next day, but it did not request a continuance of the hearing. Although the parties stipulate that King was employed by Feltman, the State also offered no evidence regarding that relationship. Thus, it is unknown whether the parties were agreeing that King was Feltman's "employee" in a colloquial sense or in a more formal sense. That is, there was no evidence to show whether King was on Feltman's payroll or whether he was compensated more akin to an independent contractor. *Cf. Boyle*, 820 S.W.2d at 143. And no evidence showed the amount of control or supervision that Feltman had over King's work. *See id.*

The State contends that the evidence showed that Feltman "regularly assigned" King the semi-truck, indicating that Feltman had "retained common authority over the vehicle." As evidence for this contention, the State cites language in the probable cause affidavit for the

initial search warrant. The affidavit provided that King "regularly [drove] a green tractor trailer" with specific license plate and vehicle identification numbers. But whether Feltman "assigned" King the semi-truck or whether there was a leasing or contractual relationship between King and Feltman regarding the vehicle is unknown because no other evidence was introduced relating to the topic. To the extent that the State is attempting to analogize this case to *Sharp* and *Carter*, wherein the courts found it relevant to the third-party-consent analysis that the owner/employer assigned the subject vehicle to the defendant, this case is differs from those. In *Sharp* and *Carter*, the courts found significant not only that the employers/owners could assign the vehicles, but they also noted that the owner/employer could *reassign* the vehicle. *See Sharp*, 707 S.W.2d at 617; *Carter*, 569 F.2d at 804. Here, there is no evidence to show that Feltman could reassign the semi-truck to another worker. The State also contends that because he was able to search the truck and retrieve the phone, Feltman necessarily had authority over it. However, there was no evidence regarding the circumstances of Feltman's search.

In sum, we conclude that the record does not show that third-party consent was a theory of law applicable to the case. And, even if it were, the State had the burden in the trial court to prove the exception applied to the warrantless search. *State v. Betts*, 397 S.W.3d 198, 207 (Tex. Crim. App. 2013). As discussed, the evidence adduced did not show that Feltman had sufficient control or "common authority" over the semi-truck to give consent.

For the reasons discussed, the State's motion for rehearing is **denied**.

      It is so ORDERED.


Judge's signature:        <u>/s/ Richard Hightower</u>
                                    Acting for the Court

Panel consists of Justices Kelly, Landau, and Hightower.


Date: <u>June 9, 2022</u>