**Opinion issued June 11, 2013**



In The

# Court of Appeals

For The

## First District of Texas

_____

### NO. 01-11-00572-CR

_____

**BRADLEY RAY MCCLINTOCK, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 182nd District Court**
**Harris County, Texas**
**Trial Court Case No. 1280089**

---

### DISSENTING OPINION

Appellant, Bradley Ray McClintock, pleaded guilty to possession of between four ounces and five pounds of marijuana and reserved his right to appeal the denial of his motion to suppress evidence obtained as a result of a search

warrant. The trial court assessed punishment at three years' deferred adjudication and a $500 fine. On appeal, McClintock argues that the trial court abused its discretion when it denied his motion to suppress. He contends that (1) the police's use of a drug dog to sniff at his apartment door from an external stairway outside his apartment building was a warrantless search of his apartment that invalidated the later search warrant under which officers entered the apartment and seized the marijuana; and (2) the probable cause affidavit was insufficient without this tainted information to show probable cause to obtain the warrant. The majority agrees with McClintock and remands the case for a new trial without the evidence discovered in the apartment.

I would hold that the untainted information contained in the probable cause affidavit, apart from the information that the dog alerted on the landing outside McClintock's second-floor residence, was sufficient to authorize the magistrate to issue the warrant. *See Davis v. State*, 202 S.W.3d 149, 156 (Tex. Crim. App. 2006). Therefore, I respectfully dissent from the majority's opinion and judgment reversing the judgment of the trial court. I would affirm.

## Background

After receiving information that marijuana was being grown on the second floor of a two-story brick duplex at 412 West Clay Street in Houston, Texas, Department of Public Safety officers set up surveillance of the building. In an

2

affidavit given to show probable cause to search the location for marijuana and evidence related to marijuana cultivation, the affiant, Officer R. Arthur, a police officer qualified to recognize the odor of marijuana and with extensive experience in narcotics investigation, described the location in detail. A business was located on the first floor of the duplex, and a parking area was located at the rear of the building. Officer Arthur stated,

> There are no gates, fences or doors that block access to this parking area [behind the duplex] or to the stairs leading to the door to the 2nd floor. This stairway is open to the public in that it could easily be where a delivery person could or would make deliveries to the upstairs residence area.

He also attached a photograph of the location to the affidavit. Based on his training and experience, the affiant found his observations of McClintock's unusual comings and goings "at hours well before and after the business hours of the business on the first floor" during the week in which surveillance was conducted at the location to be "consistent with possible narcotics activity."

The affidavit stated that on September 29, 2010, the affiant approached the location around 11:30 p.m. and smelled what he knew from training and experience to be marijuana "from the outside of this location." After he smelled the marijuana, he requested and received the assistance of a narcotics canine at the location. The affiant then approached the duplex with other officers and a trained forensic narcotics dog, Sita. He observed Sita and her handler, Officer K. Uhlin,

3

walk up to the second floor doorway using the open-to-the-public stairway leading to the second floor of the location, where Sita gave a positive alert. Based on the investigation, Officer Arthur applied for a search warrant. The magistrate issued the warrant, finding that the rear entrance to the apartment where Sita alerted was open to the public and was not curtilage; that the dog sniff was not a search; and that the alert at the rear entrance to the apartment established probable cause to issue the warrant. The police seized marijuana from McClintock's apartment.

A subsequent affidavit, filed in response to appellant's motion to suppress, supplied more details, but did not alter the facts on which the search warrant issued. The supplemental affidavit was supported by a number of photographs.[1]

The supplemental affidavit, also prepared by Officer Arthur, detailed the surveillance conducted on McClintock between September 23, 2010, and September 29, 2010. Officer Arthur averred that there were two driveways on either side of the building leading to the rear parking area of the duplex. The driveway to the west of the building was shared with an adjacent duplex. There were "no gates, fences, security devices, or any other type of obstruction blocking either driveway, or the parking access in the rear of the duplex." The parking area

---

[1] These additional facts were not relied on by the magistrate to provide probable cause for issuance of the search warrant. They are included here to provide context for Officer Arthur's affidavit stating that he found McClintock's activities during the surveillance period to be consistent with possible narcotics activity in contrast to the majority's speculation as to what the officers might have observed.

behind the duplex was a concrete slab surface and was "open to the rear parking area of the adjacent duplex to the west," and this parking area was "not blocked by fences, gates, or any other type of obstructions and share[d] primarily the west driveway as access, but [was] also accessible from the east driveway." The officers observed multiple vehicles parked in this area for extended periods of time.

There were two front doors to the building side by side on a small porch. Officer Arthur averred that the door on the right led to the first-floor business and that the officers did not know what the second door led to, but they had not seen anyone use it during their multiple days of surveillance. An outside staircase behind the duplex led from the parking area to an outside back door on the second floor. Officer Arthur averred that it was the type of stairway that "a delivery person could or would make deliveries to the upstairs residence area."

On September 29, 2010, Officer Arthur, Officer Uhlin, Sita, and another officer approached the location around 11:30 p.m. Officer Arthur averred that he could smell marijuana while standing on the sidewalk towards the southeast corner of the location. He observed that several window air conditioning units on the second floor were running, but the air conditioning units on the first-floor windows were not running. He continued to smell the odor of marijuana as he walked up the driveway to the rear of the building and while he was standing in the back parking

5

area. Officer Uhlin and Sita then walked up the external stairs to the back door, where Sita gave a positive alert to indicate the presence of marijuana. Officer Arthur averred that "Officer Uhlin stated she observed a towel and plastic sealing the bottom of the back door and around the seam near the door handle," which he knew was a type of seal used to prevent odors from escaping a location. He walked down the west driveway back to the front sidewalk and noted that all of the blinds on the upstairs windows were closed, and all of the upstairs windows appeared to be covered by aluminum foil or another similar item. He knew from experience that cold air was needed to cool rooms where high intensity lights are used to grow marijuana and that covering windows in reflective material is commonly used to prevent light from escaping and to maximize the amount of light available for growing marijuana.

The trial court denied the motion to suppress and made findings in support of the denial.

**Analysis**

## A.    *Standard of Review*

We review a trial court's ruling on a motion to suppress using a bifurcated standard: We give almost total deference to the historical facts found by the trial court, and we review de novo the trial court's application of the law. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). When a trial court is

determining probable cause to support the issuance of a search warrant, there are no credibility determinations; instead, the court is limited to the four corners of the affidavit. *Id.* (citing *Hankins v. State*, 132 S.W.3d 380, 388 (Tex. Crim. App. 2004)).

We pay great deference to a magistrate's determination of probable cause due to the strong constitutional preference for a warrant. *Illinois v. Gates*, 462 U.S. 213, 236, 103 S. Ct. 2317, 2331 (1983). As long as the magistrate had a substantial basis for concluding that probable cause existed, we will uphold the magistrate's probable cause determination. *McLain*, 337 S.W.3d at 271 (citing *Gates*, 462 U.S. at 236, 103 S. Ct. at 2331). "Probable cause exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found at the specified location. It is a flexible and non-demanding standard." *Id.* at 272.

On review, we interpret the affidavit before the magistrate in a commonsense and realistic manner. *Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007). We recognize that the magistrate may draw reasonable inferences. *Id.* "When in doubt, we defer to all reasonable inferences that the magistrate could have made." *Id.* Although we do not rubber stamp the magistrate's determination, the magistrate's decision should carry the day in doubtful or marginal cases, even if we might reach a different result upon de novo

7

review. *Jones v. State*, 338 S.W.3d 725, 734 (Tex. App.—Houston [1st Dist.] 2011), *aff'd*, 364 S.W.3d 854 (Tex. Crim. App. 2012).

## B. The Majority Opinion

Here, Officer Arthur's affidavit was supported by three grounds for finding probable cause to search the location, the second floor of 412 West Clay, for narcotics. First, Officer Arthur stated he was a trained Texas Department of Public Safety officer and that he recognized the coming and going of McClintock from the residence at unusual hours as "consistent with possible narcotics activity." Second, Officer Arthur himself smelled what was known to him "from training and experience to be marijuana" from "the outside of this location," i.e., from outside 412 West Clay. Third, there was the sniff by the dog Sita at the top of the stairway. Disregarding the information from the dog sniff, the fact that Officer Arthur himself smelled marijuana from outside of the location while in a public space constitutes a sufficient basis by itself to obtain a warrant to search the premises for marijuana cultivation, especially when buttressed by the tip that officers received concerning the growing of marijuana at the location and Arthur's observation of McClintock's unusual comings and goings, which, as a trained and experienced narcotics investigator, he knew to be "consistent with possible narcotics activity."

8

The majority acknowledges that the evidence seized under the warrant would be admissible, even if the dog sniff was illegal, "'if the warrant clearly could have been issued on the basis of the untainted information in the affidavit.'" Slip Op. at 8 (quoting *Brackens v. State*, 312 S.W.3d 831, 838 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd)); *see also Castillo v. State*, 818 S.W.2d 803, 805 (Tex. Crim. App. 1991) (holding that "the inclusion of tainted allegations in an affidavit does not necessarily render a resulting search warrant invalid"), *overruled on other grounds*, *Torres v. State*, 182 S.W.3d 899 (Tex. Crim. App. 2005). "The relevant inquiry into probable cause based upon a tainted affidavit is to put aside the tainted allegations and determine whether the independently acquired and lawful information clearly established probable cause." *State v. Bridges*, 977 S.W.2d 628, 632 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (citing *Castillo*, 818 S.W.2d at 805); *see Pool v. State*, 157 S.W.3d 36, 44 (Tex. App.—Waco 2004, no pet.).

The majority, however, finds the dog sniff to be illegal, discounts the additional bases for finding probable cause to issue the search warrant, and holds that the dog sniff invalidated the search warrant. First, it states, "Officer Arthur did not purport to specify that from his position outside of the 'location,' he actually identified the marijuana smell to be coming from the upstairs apartment, as opposed to another location such as the ground-floor purveyors of vegan food.

9

Instead, the officer identified his own location and stated that he smelled marijuana 'from the outside of this location.' . . . Based on lawfully obtained information within the four corners of the original affidavit, the marijuana odor detected by the officer could have emanated from anywhere near the surveilled location, including the first-floor businesses or a neighboring house." Slip Op. at 12. It then concludes that "Officer Arthur's statement concerning the odor, standing alone, does not support a determination of probable cause because it was not tied to the specific, particular place to be searched." Slip Op. at 12–13 (citing *McLain*, 337 S.W.3d at 272 (holding that probable cause exists when "there is a fair probability that contraband or evidence of a crime will be found at the specified location") and *Davis*, 202 S.W.3d at 156 (holding that affidavit supported probable cause because police officer specified particular house from which he smelled odor of methamphetamine manufacturing)).

In holding that the probable cause affidavit in this case did not meet the particular place requirement for obtaining a warrant, the majority cites several cases from various federal circuits holding that when a search involves a building with multiple units, the warrant must specify the precise unit that is to be searched. *See, e.g.*, *United States v. Perez*, 484 F.3d 735, 741 (5th Cir. 2007). The probable cause affidavit in this case specified the target of the search: "the separate 2nd floor area of the duplex located at 412 West Clay . . . ." Thus, the affidavit

10

identified the precise unit to be searched. *See id.* The majority cites no authority for its conclusion that smelling contraband from outside a multi-unit building, in conjunction with a tip that illegal activity was occurring at a particular unit and observations of actions of the resident that appeared to an experienced narcotics officer to be consistent with narcotics activity, does not provide probable cause to search the specified unit in that building and that more precise information about the specific location from which the odor is emanating is necessary to establish probable cause. *See Parker v. State*, 206 S.W.3d 593, 599 (Tex. Crim. App. 2006) ("The odor of contraband is certainly an important fact which may (or may not) be dispositive, given a specific context, in assessing whether probable cause exists.").

The majority then dismisses McClintock's unusual comings and goings well after business hours on the ground that this activity, on its face, "apparently innocent" and "is equally consistent with other 'possible . . . activity' that happens during the night at times 'before and after . . . business hours . . . .'" Slip Op. at 13–14. This conclusion dismisses the affiant's experience and knowledge of suspicious narcotics-related activity and reevaluates the evidence on appeal. The majority thus disregards the trial court's findings that the warrant was supported by probable cause.

I agree with the majority that the dog sniff must be disregarded as grounds for establishing probable cause, but I disagree with its conclusion that the untainted

11

information in the affidavit did not establish probable cause to search McClintock's apartment.

The majority holds that the landing in front of McClintock's apartment, which "led only and directly to McClintock's door," was part of the apartment's curtilage and was not part of a public or common area. Slip Op. at 7. Thus, when the police used a trained dog to sniff at the apartment's door from the landing, "they intruded upon his home and conducted a search within the meaning of the Fourth Amendment." Slip Op. at 7–8 (citing *Florida v. Jardines*, 133 S. Ct. 1409, 1417–18 (2013)). This "search from within McClintock's curtilage was presumptively unreasonable . . . ." Slip Op. at 8.

I agree with the majority that, under *Florida v. Jardines*, the outside landing on which Sita alerted to a controlled substance was part of the curtilage of McClintock's apartment. 133 S. Ct. at 1415. I also agree that, under *Jardines*, "[t]he government's use of trained police dogs to investigate the home and its immediate surroundings is a 'search' within the meaning of the Fourth Amendment." *Id.* at 1417–18.

It is important, however, to distinguish "independently acquired and lawful information" from unlawfully obtained information. *See Bridges*, 977 S.W.2d at 632. As both the five-person majority in *Jardines* and the three-person concurrence drawn from that majority make clear, "The police

officers . . . conducted a search because they used a 'device . . . not in general public use' (a trained drug-detection dog) to 'explore details of the home' (the presence of certain substances) that they would not otherwise have discovered without entering the premises." 133 S. Ct. at 1419 (Kagan, J., concurring) (quoting *Kyllo v. United States*, 533 U.S. 27, 40, 121 S. Ct. 2038, 2046 (2001)). Justice Kagan, making the privacy argument (as opposed to the premises argument) that the majority in *Jardines* declined to make, emphasized that the trained forensic dog was a "'sense-enhancing' tool," "not 'in general public use'," and, for that specific reason, could not be used by the police "to examine a home without a warrant or exigent circumstance." *Id.* at 1419–20 (quoting *Kyllo*, 533 U.S. at 34, 36, 121 S. Ct. at 2043). The concurrence expressly distinguished the use of such a "sense-enhancing tool," stating, "If officers can smell drugs coming from a house, they can use that information; a human sniff is not a search, we can all agree." *Id.* at 1419 n.2 (citing *Kyllo*, 533 U.S. at 35 n.2, 121 S. Ct. at 2043 n.2, as drawing same distinction). This "bright line" rule invalidated the warrantless search by Sita; but it did not invalidate Officer Arthur's smelling marijuana coming from the building "from outside the location." Under the same bright line rule, this human sniff was not a search. *See id.*

Texas law conforms to the distinction set out in the *Jardines* concurrence and in *Kyllo* between the use of a sense-enhancing search device (here, as in

13

*Jardines*, a trained forensic narcotics canine) to search a location and the use of the ordinary sense of smell of a trained police officer to establish probable cause to obtain a warrant to search the location for contraband. "If an affiant seeking a search warrant attests to the presence of an odor and a magistrate finds the affiant qualified to recognize the odor, this information is considered persuasive in obtaining a warrant." *Davis*, 202 S.W.3d at 156; *see also Johnson v. United States*, 333 U.S. 10, 13, 68 S. Ct. 367, 369 (1948) (holding qualified officer's smell of contraband is often "evidence of most persuasive character."). Generally, when a police officer smells marijuana in a location, he has probable cause to search that location. *See United States v. Ibarra-Sanchez*, 203 F.3d 356, 357 (5th Cir. 2000) (once police smelled marijuana in van, they had probable cause to search it); 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 3.6(b) (4th ed. 2004). The police officer does not have to set forth in the probable cause affidavit specific qualifications or training for detecting the odor—as long as the magistrate could have reasonably inferred that the officer had past experience with the odor by virtue of his position as a peace officer, that inference is sufficient to show that the officer was qualified to recognize the odor. *See Davis*, 202 S.W.3d at 156–57.

*Davis* illustrates a circumstance in which a police officer's smell of narcotics properly allowed a magistrate to determine that probable cause existed, even when

other information in a "far from exemplary" supporting affidavit was insufficient to support probable cause when taken by itself. 202 S.W.3d at 155–57. In *Davis*, a police officer smelled "a strong chemical odor he has associated with the manufacture of methamphetamine" coming from the defendant's residence when the officer drove by. *Id.* at 152. The affidavit also contained information that the investigating officers "received information" from unspecified confidential informants and Crime Stoppers tips that the defendant was making methamphetamine at the residence. *Id.* While holding that the latter information was insufficient by itself to support issuance of a warrant, the Court of Criminal Appeals held that the fact that the officer smelled the odor of methamphetamine authorized the magistrate to issue the warrant. *Id.* at 156. The officer who smelled the odor was qualified by virtue of the assertion in the affidavit that he was a patrol officer in the locality in question. *Id.* The other background information, although unable to support issuance of a warrant by itself, then supported the critical assertion that the officer had smelled methamphetamine production. *Id.* at 157. Altogether, the affidavit contained sufficient information within its four corners to support the magistrate's probable cause determination. *Id.* at 158.

Likewise, the warrant in this case could have been issued based on the information in the affidavit that Officer Arthur, a trained and experienced narcotics officer, smelled marijuana from outside the residence and that he and the other

15

investigating officers observed behavior consistent with narcotics activity during the surveillance of 412 West Clay following a tip that marijuana was being grown inside the second floor of the premises. Therefore, disregarding the information related to the dog sniff, the remaining statements in the affidavit clearly supported the issuance of the warrant. *See Brackens*, 312 S.W.3d at 838. Moreover, because the dog sniff information was clearly unnecessary to establish probable cause, McClintock could not have been harmed by the inclusion in the affidavit of the information that the dog alerted outside his apartment door at the top of the exterior staircase. *See Pitonyak v. State*, 253 S.W.3d 834, 848 (Tex. App.—Austin 2008, pet. ref'd) (holding that if tainted information is clearly unnecessary to establish probable cause, defendant could not have been harmed by inclusion of tainted information). Accordingly, I would hold that it was not an abuse of discretion by the trial court to deny McClintock's motion to suppress and to hold that the probable cause affidavit was valid.

**Conclusion**

For the foregoing reasons, I would affirm the judgment of the trial court.


                                                     Evelyn V. Keyes
                                                     Justice

Panel consists of Justices Keyes, Massengale, and Brown.

Justice Keyes, dissenting.

Publish.  TEX. R. APP. P. 47.2(b).