# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-06-00663-CR

**Derrick Ramon Ford, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF CALDWELL COUNTY, 421ST JUDICIAL DISTRICT
### NO. 2004-223, HONORABLE TODD A. BLOMERTH, JUDGE PRESIDING

## O P I N I O N

A jury found appellant Derrick Ramon Ford guilty of three counts of engaging in organized criminal activity and assessed his punishment for each count at eight years in prison and a $10,000 fine.[1] Appellant contends that the evidence is legally and factually insufficient to sustain these convictions. He also urges that venue was not proved and that his trial counsel rendered ineffective assistance. Because we agree with appellant that the evidence is legally insufficient to sustain his convictions on two of the three counts, we reverse those convictions and render

---

[1] We initially dismissed this appeal for want of prosecution. *See* Tex. R. App. P. 37.3(b). We granted appellant's motion for rehearing and returned the appeal to the active docket after the clerk's fee was paid.

judgments of acquittal as to them. We find no merit to appellant's contentions as they apply to the remaining count, and we affirm that conviction.

**BACKGROUND**

On January 31, 2004, a man identifying himself as Kelvin Carr purchased some fishing reels at the Lockhart Wal-Mart store, paying with a check that appeared to be drawn on an account at Bank One. When the check was presented for payment, it was returned stamped "unable to locate." As it turns out, the account number on the check did not correspond to any account at Bank One, and the routing number on the check was for Wells Fargo, not Bank One. In addition, "Kelvin Carr" proved to be a false identity. The San Antonio address and phone number printed on the check were shown to be nonexistent, and the police were unable to locate a person of that name with the birth date and identification number written on the check.

On March 25, 2004, a man identifying himself as Lambrique King purchased fishing reels and other items at the Lockhart Wal-Mart, paying with a check that appeared to be drawn on an account at Chase Bank. This check was also returned to the store stamped "unable to locate." As before, there was no such account at Chase, and the routing number on the check was for a different bank. "Lambrique King" was also shown to be a false identity. The evidence shows that the Arlington address and telephone number printed on the check were nonexistent, and the police were unable to locate a person of that name with the birth date and driver's license number written on the check.

On April 26, 2004, Sylvia Garcia, the sales clerk who had accepted the check from "Kelvin Carr" on January 31, saw the man who passed that check enter the store, and she notified

2

the store manager.  The manager, Christine Ohlendorf, called the police.  The man went to the sporting goods department, where he looked at fishing reels and a filleting knife but made no purchase.  As Ohlendorf watched, the man left the store and got into a gold automobile.  By this time, Lockhart police officers had arrived and, alerted by Ohlendorf, they stopped the vehicle before it could leave the store's parking lot.  Officer Abel Garza, who initiated the stop on the order of a superior officer, testified that appellant was sitting in the front passenger seat of the car.  The driver of the vehicle was Harry Gahagan.  A third man, Paxton Warren, got into the back seat of the car "after [the officer] initiated" the stop.  At trial, Garcia identified appellant as the man who, as "Kelvin Carr," passed the bad check on January 31, and who she saw enter the store on April 26. Ohlendorf also identified appellant as the suspect brought to her attention by Garcia on April 26.

Officers found a wallet containing a large number of blank checks between the front seats of the car.  Like the check passed at the Wal-Mart on March 25, these blank checks purported to be for an account at Chase in the name of Lambrique King.  Some of the checks had the same Arlington address as the check passed on March 25, while others had a different street address that was variously stated to be in Lockhart, Killeen, San Marcos, Copperas Cove, and Gatesville.  The same false telephone number was on all of the checks.  The checks were printed in sheets of three. The three checks on each sheet bore the same account number, while the next three checks in the series bore an account number one digit higher.[2]  All of the blank checks in this wallet had the false

---

[2] For example, the check passed on March 25 was number 8540 and had an account number ending with "511."  The wallet contained a sheet of three checks numbered 8543, 8544, and 8545 with the same account number except that it ended with "512."  The wallet also contained two checks numbered 8537 and 8538 with the same account number except that it ended with "510."

3

routing number that was on the check passed on March 25. The wallet also contained an identification card issued by the "Texas Department of Identification," a nonexistent agency, for "Lambrique King."[3] The address on the card was the Arlington address that was printed on the March 25 check. Appellant's photograph was on this card. The number on the card was identical to the number that had been written on the March 25 check, with the exception of two digits. There was testimony from a Wal-Mart security officer that persons who pass bad checks using false identifications will slightly vary the account numbers and identity numbers in order to foil check security systems.

A second wallet was found under the back seat of the car where Warren was seated. This wallet contained sheets of blank checks purporting to be for a Bank One account. The checks bore the same false routing number that appeared on the blank Chase checks found in the front seat. The name on these checks was Adrian Smith, with a purported Dallas address. Like the blank Chase checks, each sheet of three blank Bank One checks bore an account number that was one digit higher or lower than the account number on the three checks preceding or following it in the series. Another bogus "Texas Department of Identification" card, in the name of Adrian Smith and with the Dallas address, was found in this wallet. Gahagan's photograph was on this card.

The State introduced a list prepared by a Wal-Mart security officer showing that during 2003 and 2004, "Lambrique King" and "Kelvin Carr" passed scores of bad checks at more than a dozen Wal-Mart stores around Texas. Among the checks listed were the checks passed at the

---

[3] State identification cards are issued by the Texas Department of Public Safety. *See* Tex. Transp. Code Ann. § 521.101 (West 2007).

Lockhart store on January 31 and March 25, 2004. The list also included checks passed by "Lambrique King" at the Seguin Wal-Mart on September 27 and October 4, 2003, and by "Kelvin Carr" at the San Marcos Wal-Mart on March 13, 2004. All of the listed "King" checks had the Arlington address that was on the check passed in Lockhart on March 25, but the phone numbers, bank routing numbers, and account numbers on these checks varied. Most of the "Carr" checks on the list had the San Antonio address that was on the check passed in Lockhart on January 31, but some had addresses in Dallas or Arlington. As with the "King" checks, the "Carr" checks had various phone numbers, bank routing numbers, and account numbers.

The evidence reflects that Wal-Mart stores have security cameras that record all activity in the stores. Using the Lockhart store's electronic records detailing each purchase, store officials were able to find video recordings of the forged checks being passed on January 31 and March 25, 2004. These recordings were introduced in evidence and shown to the jury. Witnesses identified appellant as the "Kelvin Carr" who passed the January 31 check and the "Lambrique King" who passed the March 25 check. The security videotapes also showed that Gahagan had been in the Lockhart store on March 25 at about the same time as appellant, but they were not shown together. Similarly, the security videotapes showed that Warren had entered the Lockhart store on April 26, but separately from appellant. Appellant, Warren, and Gahagan were also shown on security video tapes made at the Seguin Wal-Mart and introduced in evidence. The record does not reflect that the Seguin videotapes were made on dates on which bad checks were given at that store.

5

## LEGAL SUFFICIENCY

When there is a challenge to the legal sufficiency of the evidence to sustain a criminal conviction, the question presented is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We review all the evidence in the light most favorable to the verdict; it is assumed that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Clayton*, 235 S.W.3d at 778.

### *Count One*

Count one of the indictment alleged that on or about April 26, 2004, appellant, acting together with Warren and Gahagan, and with the intent to establish, maintain, and participate in a combination and in the profits of a combination, committed the offense of forgery by "possess[ing] with intent to pass a forged check, purporting to be the act of Lambrique J. King, with intent to defraud or harm another, knowing such writing to be forged, and it was of the tenor following: [a reproduction of the face of the check passed at the Lockhart Wal-Mart on March 25, 2004]." *See* Tex. Penal Code Ann. § 71.02(a)(1) (West Supp. 2008) (organized criminal activity), § 32.21(a)(1)(C), (b) (West Supp. 2008) (forgery). The court's charge tracked the indictment in authorizing appellant's conviction for this offense. Appellant contends that the evidence is legally insufficient to support the jury's verdict convicting him on count one because the State failed to prove either the alleged combination or the alleged forgery.

6

*Forgery*

We begin with the predicate offense. As applied to this case, a person is guilty of forgery if he: (1) possesses a writing (2) that purports to be the act of another (3) who did not authorize that act, and (4) intends to pass this writing (5) to defraud or harm another. Tex. Penal Code Ann. § 32.21(a)(1)(A)(i), (a)(1)(C), (b). The penal code defines "another" as "a person other than the actor." *Id*. § 1.07(a)(5) (West Supp. 2008). "Person" means "an individual, corporation, or association." *Id*. § 1.07(a)(38). Finally, "individual" means "a human being who is alive, including an unborn child at every stage of gestation from fertilization until birth." *Id*. § 1.07(a)(26). Thus, in the context of this case, a writing is forged if it purports to be the act of a living human being, other than the actor, who did not authorize that act.

The evidence in this case establishes that "Lambrique King" is not a living human being. Investigators were unable to find a person named Lambrique King with the birthday written on the March 25 check. Both the address and the personal identification number on the check were false, and the check was drawn on a nonexistent bank account. Given the applicable penal code definitions, is a writing a forgery if it purports to be the act of a person who is shown to be fictitious?

In construing a statute, we generally focus on the text because it is the only definitive evidence of what the legislators had in mind when the statute was enacted. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). We may consider extratextual factors, however, if the statutory language is ambiguous, or if the plain language of the statute would lead to an absurd result the legislature could not possibly have intended. *Id*. We recognize that the definition of "forge" in section 32.21(a) might be considered ambiguous as being susceptible to two readings.

7

Under the first reading, a writing is forged if it is the purported act of a living human being other than the actor; under this reading, the other person must be real. Under the second reading, a writing is forged if it is the purported act of a purported living human being other than the actor; under this reading, the other person may be either real or fictitious.

The 1925 penal code, like the current code, defined forgery as a writing purporting to be the act of another. *See* Tex. Penal Code art. 979 (1925). But the 1925 code's definition of "another" included "all other persons, whether real *or fictitious*, except the person engaged in the forgery." *Id*. art. 988 (emphasis added). Not surprisingly, case law under the 1925 code recognized that the signing of a fictitious name to an instrument with intent to defraud could constitute forgery. *See Golden v. State*, 475 S.W.2d 273, 274 (Tex. Crim. App. 1971); *Stevens v. State*, 426 S.W.2d 222, 223 (Tex. Crim. App. 1968). The committee that proposed what became the current penal code gave no indication in its final draft that it intended to alter prior law in this respect. *See* State Bar Committee on Revision of the Penal Code, *Texas Penal Code*, *A Proposed Revision* § 32.31 cmt. (1970). The commentary to section 224.1 of the model penal code, on which section 32.21 is based, states that the proposed forgery statute should be interpreted to cover the use of fictitious names: "While the Model Code language is not as free from ambiguity as the New York statute [that expressly applied to the use of fictitious names] . . . , it nonetheless seems plain that it should be interpreted to cover such conduct and this construction is intended." *Model Penal Code* § 224.1 cmt. 4(d) (1980). The model code comment adds, "It does not unduly strain the language . . . to conclude that any use of a fictitious name necessarily 'purports' to be the act of another who, by definition, could not have authorized the act." *Id*. n.61. Finally, we note that both the court of criminal appeals

8

and this Court have affirmed forgery convictions under the current code in which fictitious names were used, although this issue was not discussed in either opinion. *See Williams v. State*, 688 S.W.2d 486, 490 (Tex. Crim. App. 1985); *Stone v. State*, 823 S.W.2d 375, 376 (Tex. App.—Austin 1992, pet. ref'd). In light of this background, we conclude that under section 32.21(a)(1), a writing is forged if it purports to be the act of a person, real or fictitious, other than the alleged forger.[4]

Appellant was identified as being the person who, posing as "Lambrique King," wrote and passed the check alleged in count one. Further, at the time of his arrest, appellant possessed blank checks largely identical to the check at issue and a false state identification card for "Lambrique King" with appellant's picture and the Arlington address that was printed on the March 25 check. From this evidence, the jury could reasonably conclude that appellant possessed a writing that purported to be the act of another who did not authorize that act because "Lambrique King" does not exist. Appellant was shown to have possessed the check with the intent to pass it, because he did pass it. Moreover, given the evidence discussed above, the jury could reasonably conclude that appellant knew the check was drawn on a nonexistent bank account. From this, the jury could reasonably infer that appellant intended to defraud and harm Wal-Mart, the merchant to whom appellant gave the check in payment for goods. Appellant argues that the State had to prove that he intended to defraud "Lambrique King," but the State had only to prove that appellant intended

---

[4] Appellant refers us to the discussion in *Sales v. State* as to whether a false claim of agency constitutes forgery. 628 S.W.2d 796, 798 (Tex. Crim. App. 1982). That opinion is not on point.

9

to defraud or harm another. The State did not allege and was not required to prove that "Lambrique King" was appellant's intended victim.

Appellant also complains that there is a discrepancy between the date alleged in the indictment ("on or about April 26, 2004") and the actual date of the alleged forgery (March 25, 2004). This discrepancy is immaterial. *See Sledge v. State*, 953 S.W.2d 253, 255-56 (Tex. Crim. App. 1997). We hold that the evidence is legally sufficient to support the jury's finding that appellant committed the forgery alleged in count one.

### *Combination*

In order to convict appellant of organized criminal activity, the State had to prove that he committed the forgery with the intent to establish, maintain, and participate in a combination or in the profits of a combination. Tex. Penal Code Ann. § 71.02(a)(1). A "combination" is three or more persons who intend to work together in a continuing course of criminal activities. *Nguyen v. State*, 1 S.W.3d 694, 697 (Tex. Crim. App. 1999) (construing Tex. Penal Code Ann. § 71.01(a) (West 2003)). In this case, the alleged combination consisted of appellant, Warren, and Gahagan.

Appellant argues that the evidence of a combination is insufficient because there is no evidence that Warren or Gahagan ever committed a forgery. This argument is without merit because the acts proving the existence of the combination need not themselves be criminal. *Id*. Appellant further complains that the State's evidence consists of nothing more than Warren's and Gahagan's mere presence at a time when appellant committed a forgery. We disagree. The evidence shows that in addition to the forged check passed by appellant on March 25, dozens of additional

10

forged checks were passed at Texas Wal-Marts in 2003 and 2004 by a person or persons posing as "Lambrique King." The evidence further shows that during this same time period, dozens of forged checks were passed at Texas Wal-Marts by a person or persons posing as "Kelvin Carr." One of the "Carr" forgeries was passed by appellant at the Lockhart Wal-Mart on January 31, 2004. On April 26, 2004, appellant, Warren, and Gahagan were together at the Lockhart Wal-Mart. With them in the car were dozens of counterfeit blank checks and a false state identification card (bearing appellant's photograph) in the name of Lambrique King, and dozens more counterfeit blank checks and a false state identification card (with Gahagan's photograph) in the name of Adrian Smith. Security videotapes showed that Gahagan had been in the Lockhart Wal-Mart on March 24 at the time appellant was passing the forged check, and that Warren had been in the Lockhart Wal-Mart on April 26 around the time that appellant had been in the store. Viewing this evidence in the light most favorable to the jury's verdict, a rational trier of fact could find beyond a reasonable doubt that appellant, Warren, and Gahagan were working together in an ongoing forgery enterprise.

We hold that the evidence is legally sufficient to sustain the jury's verdict convicting him of engaging in organized criminal activity as alleged in count one. To this extent, his first issue is overruled.

***Counts Two and Three***

Count two of the indictment alleged that on or about April 26, 2004, appellant, acting together with Warren and Gahagan, and with the intent to establish, maintain, and participate in a combination and in the profits of a combination, committed the offense of fraudulent use or possession of identifying information by "obtain[ing], possess[ing], transfer[ing] or us[ing]

11

identifying information of another, to wit: Lambrique Jamar King, with the intent to harm or defraud the said Lambrique Jamar King." *See* Tex. Penal Code Ann. § 71.02(a)(8) (West Supp. 2008) (organized criminal activity), Act of May 29, 1999, 76th Leg., R.S., ch. 1159, § 1, 1999 Tex. Gen. Laws 4064, 4064-65 (amended 2007) (current version at Tex. Penal Code Ann. § 32.51(b)(1) (West Supp. 2008)) (fraudulent use or possession of identifying information). Count three alleged that on or about the same date, and acting pursuant to the same combination, appellant committed the offense of fraudulent use or possession of identifying information by "obtain[ing], possess[ing], transfer[ing] or us[ing] identifying information of another, to wit: Kelvin B. Carr, with the intent to harm or defraud the said Kelvin B. Carr." The court's charge tracked the indictment in authorizing appellant's conviction for these offenses. Once again, appellant contends that the evidence is legally insufficient to prove either the alleged combination or the alleged predicate offenses.

### *Fraudulent Use of Identifying Information*

The offense defined by penal code section 32.51 is essentially identity theft. As the statute read in 2004 when the alleged offenses were committed, a person committed an offense if he "obtain[ed], possess[ed], transfer[red], or use[ed] identifying information of another person without the other person's consent and with intent to harm or defraud another." Act of May 29, 1999, 76th Leg., R.S., ch. 1159, § 1, 1999 Tex. Gen. Laws 4064, 4064-65 (former penal code section 32.51(b), since amended). At that time, "identifying information" meant:

> information that alone or in conjunction with other information identifies an individual, including an individual's:

(A) name, social security number, date of birth, and government-issued identification number;

(B) unique biometric data, including the individual's fingerprint, voice print, and retina or iris image;

(C) unique electronic identification number, address, and routing code, financial institution account number; and

(D) telecommunication identifying information or access device.

Act of May 28, 2003, 78th Leg., R.S., ch. 1105, § 2, 2003 Tex. Gen. Laws. 3170, 3171 (amended 2007) (current version at Tex. Penal Code Ann. § 32.51(b)(1) (West Supp. 2008)).

We have already noted that the penal code defines "individual" as a "human being who is alive." Tex. Penal Code Ann. § 1.07(26). Thus, section 32.51 unambiguously proscribes the unauthorized appropriation or use of another living human being's identity—in the form of information that identifies that individual—for the purpose of defrauding or otherwise harming either the person whose identity is stolen or some other person. That is not what happened in the causes before us. Appellant was not shown to have obtained, possessed, transferred, or used the identifying information of any living human being. Instead, the evidence shows that "Lambrique King" and "Kelvin Carr" were fictitious identities created by appellant for his criminal purposes. The names, dates of birth, identification numbers, and account numbers on the counterfeit checks and false identity cards possessed and used by appellant identified no individuals; they were merely the fictitious window dressing for appellant's fraudulent scheme.[5]

_____

[5] The State argues that section 32.51 applies to the fraudulent use of fictitious identities because the penal code definition of "individual" includes unborn children at every stage of gestation. Tex. Penal Code Ann. § 1.07(a)(26) (West Supp. 2008). If, however, an unborn child during

13

Even if the use of a fictitious identity were an offense under section 32.51, the State did not prove the offenses it alleged. Count two alleged that appellant used the identifying information of "Lambrique King" with the intent to harm or defraud "King," while count three alleged that appellant used the identifying information of "Kelvin Carr" with the intent to harm or defraud "Carr." Because these identities, including the bank accounts, were shown to be fictitious, and because appellant was shown to have known that they were fictitious, no rational trier of fact could have found beyond a reasonable doubt that appellant intended to defraud or harm "King" and "Carr."

We hold that the evidence is legally insufficient to sustain the jury's verdicts convicting him of engaging in organized criminal activity as alleged in counts two and three. To this extent, his first issue is sustained.

**FACTUAL SUFFICIENCY**

In a factual sufficiency review, all the evidence is considered equally, including the testimony of defense witnesses and the existence of alternative hypotheses. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); *Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992, no pet.). Due deference must be accorded the fact finder's determinations, particularly those concerning the weight and credibility of the evidence, but the reviewing court may disagree with the result in order to prevent a manifest injustice. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407

---

gestation acquired "identifying information" such as a name, social security number, or bank account number, that information would not be fictitious.

14

(Tex. Crim. App. 1997). The evidence will be deemed factually insufficient if the evidence supporting the verdict is so weak as to make the finding of guilt clearly wrong and manifestly unjust, or if the verdict is against the great weight and preponderance of the available evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); *Johnson*, 23 S.W.3d at 11.

The defense rested in this case without calling any witnesses. Appellant's factual sufficiency challenge to his conviction on count one simply restates his contention that the State failed to prove the alleged combination. Considering all the evidence previously discussed in a neutral light, we conclude that the jury's verdict convicting appellant on count one was neither clearly wrong and manifestly unjust nor against the great weight and preponderance of the evidence. Appellant's second issue is overruled.

## VENUE

The offense of engaging in organized criminal activity may be prosecuted in any county in which any act is committed to effect an objective of the combination. Tex. Code Crim. Proc. Ann. art. 13.21 (West 2005). In issue four, appellant asserts that no element of the offenses alleged in this case was shown to have occurred in Caldwell County, and therefore the State failed to prove that venue lay in that county. We further understand appellant to argue that the State failed to prove that any element of the offenses occurred in Guadalupe or Hays Counties, and therefore the videos showing the presence of appellant, Warren, and Gahagan in the Seguin and San Marcos Wal-Marts should not have been admitted.

Appellant's argument under this issue is essentially a restatement of his challenge to the sufficiency of the evidence with respect to the alleged combination. We have already addressed

15

the sufficiency of the evidence and will not repeat our analysis here. Venue was proper in Caldwell County because the predicate offenses were alleged to have occurred there. Evidence regarding the activities of appellant and his cohorts in Seguin and San Marcos was admissible to prove the alleged combination and, as we have already stated, it was not necessary for those activities be criminal in themselves. Issue four is overruled.

## EFFECTIVENESS OF COUNSEL

Finally, appellant contends that his trial counsel rendered ineffective assistance. To prevail on this claim, appellant must show that counsel made such serious errors that he was not functioning effectively as counsel and that these errors prejudiced appellant's defense to such a degree that he was deprived of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 988 S.W.2d 770, 771-72 (Tex. Crim. App. 1999); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). We must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). To overcome this presumption, any allegation of ineffectiveness must be firmly founded in the record and the record must affirmatively demonstrate the alleged ineffectiveness. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).

Appellant's principal complaint is that his trial attorney did not move to suppress the evidence seized during the search of the automobile incident to appellant's warrantless arrest in the parking lot of the Lockhart Wal-Mart on April 26, 2004. Appellant concedes that the police had adequate grounds to temporarily detain him and his companions for investigation, but he asserts that the arrest was unlawful because no crime was shown to have been committed on that date. We

understand this to be a reference to article 14.01, which authorizes an officer to arrest an offender without a warrant for any offense committed in the officer's presence or view. Tex. Code Crim. Proc. Ann. art. 14.01 (West 2005).

Lieutenant Chris Knudsen, the Lockhart police officer who gave the order to stop the automobile before it could leave the parking lot, testified that he had been told by Ohlendorf that the same person who had passed a forged check at the Wal-Mart in January was back in the store and attempting to pass another check. Knudsen testified that immediately after the car was stopped, he walked over and began speaking to the occupants. Knudsen said that as he was speaking to Warren, the back seat passenger, Ohlendorf walked up and identified appellant as the forger. We do not know, because the record has not been developed, whether defense counsel discovered Knudsen's account of the incident before trial. Assuming that he had, counsel may have believed that the circumstances authorized a warrantless arrest pursuant to article 14.04. *Id*. art. 14.04 (arrest on probable cause with exigent circumstances). In the absence of a more fully developed record, both as to the circumstances of the arrest and counsel's decision not to file a motion to suppress, appellant has not shown that counsel's failure to file a motion to suppress constituted deficient performance.

In a related complaint, appellant argues that counsel was ineffective because he did not ask for a jury instruction regarding the propriety of the arrest. *See id*. art. 38.23(a) (West 2005). A defendant is entitled to an article 38.23 instruction only if there are disputed fact issues material to his claim of a constitutional or statutory violation that would render evidence inadmissible. *Madden v. State*, 242 S.W.3d 504, 509-10 (Tex. Crim. App. 2007). Appellant does not identify any

17

disputed fact issues material to his claim that his arrest was unlawful. Therefore, he has not shown that counsel was ineffective for having failed to request the instruction.

Next, appellant complains that trial counsel's motion to quash the indictment was not timely filed. Counsel filed a motion to quash on the day trial began. The motion was denied by the court with the written notation, "Denied. Not timely presented." Appellant contends that the motion to quash should have been filed and set for a pretrial hearing at least seven days before trial. *See* Tex. Code Crim. Proc. Ann. art. 28.01 (West 2006). Assuming this to be true, appellant makes no effort to demonstrate that the motion to quash stated valid grounds for setting aside the indictment. Thus, appellant has not shown that he was prejudiced by this alleged failing of counsel.

Appellant further contends that his trial counsel was ineffective because he did not request an election when the State rested its case. An election is required when the State introduces evidence of multiple distinct acts or incidents, any one of which would constitute the offense for which the defendant is on trial. *Phillips v. State*, 193 S.W.3d 904, 909 (Tex. Crim. App. 2006); *O'Neal v. State*, 746 S.W.2d 769, 771 (Tex. Crim. App. 1988). In count one, the State alleged a single predicate offense, the March 25 forgery at the Lockhart Wal-Mart. Although, in proving the alleged combination, the State may have shown that appellant and his companions committed other forgeries, the State's pleading effectively limited the jury to considering the one predicate offense in determining his guilt. Appellant does not explain how the State could have more narrowly specified the offense on which it was relying for conviction. As for counts two and three, our holding that the evidence is insufficient to sustain these convictions renders the election issue moot.

18

Finally, appellant complains that trial counsel was ineffective because he did not move for an instructed verdict of not guilty. A motion for instructed verdict is not required to preserve error as to the sufficiency of the evidence to sustain a conviction. *See Grayson v. State*, 82 S.W.3d 357, 358-59 (Tex. App.—Austin 2001, no pet.). Even if we were to assume that the trial court would have granted a motion for instructed verdict as to counts two and three, we must also assume that the court would have properly refused the motion as to count one. No prejudice to appellant is shown.

Appellant has not met his burden of demonstrating that his counsel's performance at trial was outside the broad range of constitutionally effective assistance. Issue three is overruled.

## CONCLUSION

The district court prepared and signed a single judgment convicting appellant on all three counts. We affirm the judgment of conviction as to count one. We reverse the judgment of conviction as to counts two and three and render judgments of acquittal on those counts.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Puryear and Henson

Affirmed in Part; Reversed and Rendered in Part

Filed: April 10, 2009

Publish