**Affirmed and Memorandum Opinion filed May 15, 2014.**



In The

# Fourteenth Court of Appeals

## NO. 14-13-00450-CR

**STEVEN WAYNE ISBEL, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 184th District Court
Harris County, Texas
Trial Court Cause No. 1322305**

## M E M O R A N D U M   O P I N I O N

Appellant Steven Wayne Isbel appeals his conviction for fraudulent possession of identifying information. He asserts that the evidence is legally insufficient to support the conviction and challenges the trial court's assessment of court costs. We affirm.

### BACKGROUND

Officer Christopher Bruce testified that he was dispatched to a service

station to investigate a report of a woman harassing customers. It was reported that the woman was approaching customers and offering to pay for their gas with a credit card in exchange for cash.

When Bruce arrived at the service station he located the woman and appellant, who were seated in a vehicle together; the woman sat in the driver's seat and appellant sat in the passenger seat. Bruce walked up to the driver's door and began to introduce himself. As he did so, the woman turned from him and grabbed something black. Concerned for his safety, Bruce told the woman to place her hands on the steering wheel. When the woman refused to show her hands, Bruce opened the door and physically removed her from the vehicle. Bruce placed the woman in handcuffs and noticed she was concealing crack cocaine in one hand. After seeing the cocaine, Bruce called for backup. While waiting for backup to arrive, Bruce observed appellant "fidgeting" in the passenger seat; he also observed appellant discard a plastic baggie; Bruce suspected that it contained cocaine. Appellant stepped out of the car after Bruce asked him to do so and Bruce then placed appellant in handcuffs.

After securing both individuals, Bruce searched the car and found a "black Oakley [sunglass] case" containing two syringes, a used crack pipe, and a baggie containing a crystalline substance. On the passenger side, Bruce found a clear plastic baggie with white crystal-like residue. Bruce found appellant's wallet and a passport where appellant had been sitting. In appellant's wallet, Bruce found an armed forces identification card, a KBR employee access card, and a Transportation Worker Identification Card, each of which bore the name Gerald Field. Appellant's identification was also in the wallet. Underneath the wallet was a passport in the name of Joseph Johnson. Bruce also found "two bags full of Gerald Field's paperwork," which consisted of a passport, social security card,

2

driver's license, birth certificate, marriage license, military discharge certificate, health insurance card, and earnings statements, each of which bore the name Gerald Field; some of the items also contained Field's social security number. Bruce ran Field's and Johnson's names through the Houston Police Department computer and learned they had reported a recent burglary.

Johnson and Field testified that they were staying in a hotel in Houston while training for jobs with KBR. Both men worked in transportation and support for the military in Iraq and Afghanistan. Due to the nature of their work the Human Resources department at KBR required them to provide detailed identification documents such as their passports, birth certificates, social security cards, and marriage licenses in addition to immunization records. Shortly before both men were to travel overseas, their hotel room was burglarized and these items were taken. Johnson and Field identified the documents found in appellant's possession as the documents that were taken from them.

Field testified that shortly after the burglary his wife received a phone call from a check cashing location because an unidentified individual had attempted to cash one of Field's checks.

Appellant was convicted of fraudulent possession of identifying information. He stipulated to two prior convictions, and was sentenced to forty years in prison.

## STANDARD OF REVIEW

In his first issue appellant challenges the sufficiency of the evidence to show he acted with intent to defraud or harm another. When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational fact finder could have found the elements of the offense beyond a

reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (*citing Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). The jury is the exclusive judge of the credibility of witnesses and the weight of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We defer to the jury's responsibility to fairly resolve conflicts in the evidence, and we draw all reasonable inferences from the evidence in favor of the verdict. *Id*.

## ANALYSIS

### I. Sufficiency of the Evidence to Support the Conviction

Appellant was charged under section 32.51 of the Texas Penal Code, which states a person commits an offense if, with the intent to harm or defraud another, he obtains, possesses, transfers, or uses an item of identifying information of another person without the other person's consent. Tex. Penal Code § 32.51(b). Identifying information includes information that alone or in conjunction with other information identifies a person, including a person's name and date of birth. Tex. Penal Code Ann. § 32.51(a)(1)(A) (West Supp. 2013). The purpose of this section is to protect individuals from identity theft. *See Ford v. State*, 282 S.W.3d 256, 264–65 (Tex. App.—Austin 2009, no pet.).

To find appellant guilty of fraudulent possession of identifying information, the jury had to find beyond a reasonable doubt that appellant possessed Field's and Johnson's identifying information without their consent, and that appellant did so with the intent to harm or defraud another. *See* Tex. Penal Code § 32.51. "Harm" is defined under the Texas Penal Code as:

> [A]nything reasonably regarded as loss, disadvantage, or injury, including harm to another person in whose welfare the person affected is interested.

Tex. Penal Code Ann. § 1.07(a)(25) (West Supp. 2013).

Juries are free to "use common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to the inferences that may reasonably be drawn from the evidence." *Aguilar v. State*, 263 S.W.3d 430, 434 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd), *quoting Taylor v. State*, 71 S.W.3d 792, 795 (Tex. App.—Texarkana 2002, pet. ref'd). This includes inferring intent from an individual's acts, words, or conduct. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).

Appellant relies on *Crittenden v. State*, 671 S.W.2d 527 (Tex. Crim. App. 1984), and *Stuebgen v. State*, 547 S.W.2d 29 (Tex. Crim. App. 1977), in arguing that that the evidence is insufficient to support a finding that he intended to harm or defraud another. The facts presented in each of these cases are distinguishable from the facts of this case.

In *Crittenden*, the court held that the State failed to prove the defendant's knowledge of a forgery when he passed a check. 671 S.W.2d at 528. The defendant had attempted to open checking and savings accounts with a forged check. *Id.* at 527. When the bank teller became suspicious she asked Crittenden to wait while she called the person who allegedly signed the check. *Id.* The individual confirmed her suspicion that the check was forged. *Id.* Crittenden told the police he had received the check in the mail from his attorney who had been representing him in a personal injury case, which had recently settled. *Id.* The check, although drawn on the account of a service station, appeared to have been signed by Crittenden's personal injury attorney. *Id.* at 528. At trial, the attorney testified that he had told Crittenden the case had settled, but he had not received the settlement funds, nor had he signed the check. *Id.* The court found that although the State proved the forgery, it failed to show that Crittenden possessed the check with intent to defraud or harm. *Id.* The court noted that Crittenden made no statement from which it

5

could be inferred he knew the instrument was forged, he was listed as the payee and did not falsely represent himself, and there was no connection made between appellant and the check stolen from the service station prior to the time appellant said he received it in the mail. *Id.* The court further noted that Crittenden made no attempt to flee the bank while the teller phoned the attorney to determine if the check was genuine. *Id.* For those reasons, the Court of Criminal Appeals determined that the evidence was insufficient to support a finding that Crittenden intended to defraud or harm another by presenting the check to the bank. *Id.*

Similarly, in *Stuebgen*, the defendant presented a forged check for payment at a grocery store; the store later learned the check had been forged. 547 S.W.2d at 31. Stuebgen was listed as the payee on the check. *Id.* The State did not produce any evidence that Stuebgen's handwriting was anywhere on the check, nor did Stuebgen make any statement from which knowledge of the forgery could be inferred. *Id.* at 32. In light of the fact that Stuebgen did not falsely represent himself when presenting the check for payment, the Court of Criminal Appeals held that the State failed to prove that he knew the instrument he passed was forged. *Id.* at 32–33.

By contrast, in this case, police discovered stolen identifying information in appellant's wallet and in bags in the back seat of his car. When approached by police officers, appellant did not initially cooperate; instead, he attempted to hide his wallet and Johnson's passport by sitting on them. Johnson testified that in order to leave the country for his employer he had to get a "one-day turnaround on [his] passport, which is very costly." He was within 30 minutes of missing his flight due to the loss of his passport. Field was required to contact his bank and credit card companies to cancel his checking account and credit cards.

Intent may be proved by circumstantial evidence, *Williams v. State*, 688

S.W.2d 486, 488 (Tex. Crim. App. 1985), and a person's intent may be inferred from acts, words, or conduct. *Guevara v. State*, 152 S.W.3d at 50. The State introduced evidence that appellant possessed stolen identifying information from Field and Johnson including social security numbers, passports, and driver's licenses without their permission. Unlike *Crittenden* and *Stuebgen*, appellant's actions reflected that he knew he possessed another's stolen identifying information and attempted to conceal it from police. A rational fact finder could have inferred that appellant possessed the information with intent to harm Field and Johnson. *See Garcia v. State*, 630 S.W.2d 303, 305 (Tex. App.—Houston [1st Dist.] 1981, no pet.) (holding "use of deception by an accused" in the form of "engaging in behavior designed to avoid detection" is "evidence of intent to defraud and harm"). We find the evidence sufficient to support a finding that appellant had intent to harm or defraud another, and overrule appellant's first issue.

## II.    Court Costs

In his second issue appellant argues the trial court's assessment of court costs was unlawful. Appellant requests modification of the judgment to delete the assessment of court costs because the bill of costs was not prepared and certified until after the judgment was signed.

The judgment includes an assessment of $259 in court costs. The record contains a certified, signed bill of costs listing $259 in court costs. We review the assessment of court costs on appeal to determine if there is a basis for the costs, not to determine whether there was sufficient evidence offered at trial to prove each cost. *Johnson v. State*, 423 S.W.3d 385, 390 (Tex. Crim. App. 2014). Traditional sufficiency-of-the-evidence standards of review do not apply. *Id*.

Generally, a bill of costs must (1) contain the items of cost, (2) be signed by the officer who charged the cost or the officer who is entitled to receive payment

for the cost, and (3) be certified. *Id.* at 392–93; *see* Tex. Crim. Proc. Code Ann. arts. 103.001, 103.006 (West 2006). The record supports the assessment of costs in this case because the record contains a bill of costs that contains each item of cost, is signed by a representative of the district clerk's office who is entitled to receive payment of the costs, and is certified by the district clerk. *See Johnson*, 423 S.W.3d at 393. There being no challenge to any specific cost or the basis for the assessment of such cost, the bill of costs supports the costs assessed in the judgment. *Id.* at 396. The fact that the bill of costs was not prepared until after the court signed the judgment does not defeat the lawfulness of the bill of costs. *Id.* at 394. ("[M]atters pertaining to the imposition of court costs need not be brought to the attention of the trial court, including a bill of costs prepared after a criminal trial."). We overrule appellant's second issue.

We affirm the trial court's judgment.

/s/    William J. Boyce
       Justice

Panel consists of Justices Boyce, Busby, and Wise.
Do Not Publish — Tex. R. App. P. 47.2(b).

8