**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-24-00198-CR**
_____

**PEYTON COLE SMITH, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court**
**Jefferson County, Texas**
**Trial Cause No. F20-34631**

**MEMORANDUM OPINION**

Peyton Cole Smith ("Smith") was indicted for aggravated sexual assault of

A.K. ("Amy"),[1] a child under six years of age, and the indictment included an

enhancement paragraph alleging that Smith had a prior felony conviction. *See* Tex.

Penal Code Ann. § 22.021. At trial, Smith pleaded "not guilty," and a jury found him

---

[1] We use pseudonyms to refer to the alleged victim, family members, and others. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

1

guilty as charged in the indictment. At the punishment phase, Smith pleaded "true" to the indictment's enhancement paragraph, and the trial court sentenced Smith to ninety-nine years in prison in accordance with the jury's assessment of punishment. Smith timely appealed. In two appellate issues, Smith argues (1) the trial court erred in denying his motion to suppress and admitting the evidence obtained from Smith's phone by his girlfriend M.H. ("Mandy") that she provided to law enforcement and resulted in Smith's arrest, and (2) that his counsel "erred" in failing to request a jury instruction under article 38.23. Finding no error, we affirm the trial court's judgment.

<u>Background and Evidence at Trial</u>[2]

Prior to trial, Smith's previous counsel filed a motion to suppress all the information recovered from Smith's cell phone and argued that the State and Mandy unlawfully obtained the evidence in violation of the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution; article I, section 9 of the Texas Constitution; and article 38.23 of the Texas Code of Criminal Procedure. After a hearing, the trial court signed an Order on Defendant's Motion to Suppress ("Order") and denied the motion. The trial court's Order noted that Mandy testified at the hearing that she and Smith lived together for three years with her two children, one of which was the alleged victim in this case. According to the Order, Mandy

---

[2] We limit our discussion of the facts and evidence to what is necessary for the disposition of this appeal.

2

testified that she and Smith each had their own cell phones, they allowed each other access to their cell phones, and they shared passwords to each other's phones and other electronic devices. Mandy testified that they shared each other's cell phones, vehicles, and social media accounts.

According to the Order, Mandy testified at the suppression hearing that in May of 2020 she asked if she could use Smith's cell phone, and he agreed. She recalled that she used the passcode given to her by Smith to access the phone and that is when she discovered the video of Smith and Mandy's child, Amy, involved in sexual acts with each other, and she explained how she recognized who was in the video and where the video was taken. The Order states that Mandy testified that to access the video she used the password "cookies23[,]" that she and Smith shared that password, that she had previously created it, and that Smith began using that password "jointly" after she began using the password. The Order states that Mandy testified that she reported the offense to law enforcement.

The Order also states:

> This Court concludes that upon the weight and credibility of the evidence of the facts presented in this case, there was no constitutional or statutory violation by any State actor, or one acting under color of State authority. In addition, under these facts, defendant had no reasonable expectation of privacy in his cell phone in relation to [Mandy]. Under the credible facts presented herein, [Mandy] had express consent and authority to access defendant's cellular phone.
> In sum, the search warrants and the affidavits are proper and support probable cause, and the evidence derived therefrom was not obtained in violation of a) the Fourth, Fifth, Sixth, and Fourteenth

3

Amendments to the United States Constitution, b) Article I, Sections 9, 10 and 19 of the Texas Constitution, or c) Article 38.23 of the Texas Code of [C]riminal Procedure.

At trial and prior to the presentation of evidence, defense counsel re-urged the motion to suppress during the following exchange:

> [Defense counsel]: . . . [M]y purpose right now, your Honor, is to reurge that motion to suppress in the sense that the video was obtained illegally, turned over to the police, and then they used that video to then issue warrants and get the data from the cell phone.
> If not for taking that phone illegally without a search warrant, then they would not have the evidence. So all the evidence today I'm going to object to, and I don't know if the Court wants me to do a running objection to that or object each time, whatever the Court determines is best. But we would - -
>
> THE COURT: Whatever you decide.
>
> [Defense counsel]: - - object to anything related to the video or his cell phone. It's our intention it was seized improperly; and anything they got, evidence, is fruit of the forbidden tree[.] . . .
>
> THE COURT: You've seen - - you have a copy of this [Order on Defendant's Moton to Suppress]?
>
> [Defense counsel]: Yes, sir.
>
> THE COURT: But I ruled otherwise.
>
> . . .
>
> [Defense counsel]: And so I'm just preserving for error, your Honor, for the appeal court. Now, I understand that you're ruling that it's all admissible and I understand that, but I wanted to make sure on the record that we are objecting to that and that I preserve my objection, preserve the error for a possible appeal, your Honor.

4

THE COURT: Okay. And the Court can always take up new or additional or other evidence that wasn't submitted beforehand in my consideration on the ruling. So you're free to relitigate that in a trial.

[Defense counsel]: Yes. And I may be objecting during the trial to other things that come up, but I just want to reurge that original motion and make sure it's part of this.

. . .

THE COURT: . . . So, the order exists on the motion to suppress that the Court signed which denied the defendant's request. But he can raise it, and it must be resupplied with evidence in front of a jury for a jury's determination as well.

Officer Brant Halfin with the Nederland Police Department testified at trial that he was dispatched in May of 2020 to an address in regard to a sexual assault. Officer Halfin recalled that he met with Mandy at that location and that Smith was Mandy's boyfriend. A video recorded from the body camera Officer Halfin was wearing that day when he responded to the scene was admitted into evidence without objection and published to the jury.

According to Officer Halfin, Mandy told him that she had discovered an explicit video on Smith's phone that portrayed him sexually assaulting her daughter at a different location than the one to which he responded. Officer Halfin recalled that Mandy showed him the video, and that after viewing the video, it was clear to Officer Halfin that an offense had occurred. Officer Halfin testified that he gave Mandy his department email address to send a copy of the video to him directly from her, and she voluntarily emailed him a copy of the video. Officer Halfin testified that

5

the video he received from Mandy was an exact copy of the video that he had reviewed at the scene. State's Exhibit 2, a copy of the video from Smith's phone, was admitted into evidence over Smith's objection on the same grounds as the pre-trial motion to suppress in that Mandy improperly obtained the video from Smith's phone and the police should have requested a warrant for the video. In overruling the objection, the trial court noted that generally family members can get access to their own family's items without a warrant and that Mandy voluntarily turned over the video to law enforcement. The trial court also stated that its prior Order on defendant's motion to suppress "will be made a part of the record for the purposes of this trial."

Mandy testified that she began dating Smith in 2017. According to Mandy, she moved in with Smith in 2017, they got engaged around 2018, and she lived with him until 2020. Mandy testified that during the time they lived together they shared a lot of things like their cars and the desktop computer, passwords for online accounts, passcodes for each other's phones and other electronic devices, and passwords for each other's social media accounts.

Mandy testified that in May of 2020, she was inside their house, and Smith was outside pressure washing. Mandy recalled that her phone was not working, he told her where his phone was, she got it from where it was charging in Smith's computer room in the house, and she "started to go through" his phone to see if he

6

had been unfaithful to her. According to Mandy, she did not ask to use his phone that day, but she had permission to use it because "[h]e made it known that I could use it, if I needed to." She testified that she knew his passcode for his phone because he had given it to her previously. She testified that she discovered a video on his phone of him "sexually abusing" her daughter. At the time she discovered the video, her daughter was under six years of age. She recalled that she was able to access the video through the Verizon Cloud application using the password "cookies23[,]" which was a password Mandy had created and used for accounts and that Smith began also using as his password for his accounts. Mandy testified as to how she identified Smith as the perpetrator and Amy as the victim in the video and how she identified the location of the sexual assault as Amy's bedroom.

According to Mandy, she voluntarily provided a copy of the video to law enforcement and provided them with the passcode to Smith's phone when law enforcement was conducting an investigation. Detective Corey Mendoza testified that a search warrant was obtained to search Smith's home to search for certain physical evidence depicted in the video as well as electronic devices capable of storing data. Detective Mendoza testified that he assisted in executing the warrant at the home and seized items including Smith's phone. Video from one of the detective's body cameras depicting the execution of the search warrant was admitted

7

into evidence over the defense's objection that the video was not properly authenticated, and the video was published to the jury.

Denial of Smith's Motion to Suppress

In issue one, Smith argues that during Mandy's possession of the phone, her search of his private files on the phone led to the discovery of photographs and videos that showed sexual acts between Smith and Mandy's five-year-old daughter, Amy. According to Smith, Mandy did not have consent to search Smith's private information on his phone, and Mandy provided "[t]he illegally obtained items" to law enforcement, which then was the basis for law enforcement's search warrant that led to his arrest. On appeal, Smith contends that the trial court erred in denying Smith's motion to suppress because the evidence from Smith's phone was obtained in violation of article 38.23. The State responds on appeal that Smith did not preserve error because his argument on appeal does not comport with his argument at trial and that he failed to object each time evidence obtained from his phone was offered at trial. The State argues that, even if Smith preserved error, the trial court did not err in denying the motion to suppress because Smith (1) did not assert that Mandy violated any law or statute; (2) did not demonstrate that he had a legitimate expectation of privacy in the phone; and (3) did not demonstrate any violation of his constitutional or statutory rights by the police or Mandy. Finally, according to the

8

State, even if the trial court did err in denying the motion to suppress, the error was harmless.

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion. *State v. Espinosa*, 666 S.W.3d 659, 667 (Tex. Crim. App. 2023). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement, is arbitrary or unreasonable, or is without reference to any guiding rules or principles. *State v. Thomas*, 428 S.W.3d 99, 103 (Tex. Crim. App. 2014); *State v. Mechler*, 153 S.W.3d 435, 439-40 (Tex. Crim. App. 2005) (citing *Montgomery v. State*, 810 S.W.2d 372, 378-79 (Tex. Crim. App. 1990)). Suppression issues may raise mixed question of law and fact. *See Loserth v. State*, 963 S.W.2d 770, 772 (Tex. Crim. App. 1998) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). We review de novo issues of pure law and the application of the law to the facts of the case, while deferring to the trial court's factual determinations. *Id.*; *see also State v. Ruiz*, 577 S.W.3d 543, 545 (Tex. Crim. App. 2019). In a motion to suppress hearing, the trial court is the sole trier of fact and judge of the witnesses' credibility and weight to be afforded testimony. *See Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). When the issues raised in suppression hearings are consensually relitigated before the jury, we consider the evidence from both the motion to suppress and the trial in our review. *Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996), *cert. denied*, 519 U.S. 1043 (1996).

The purpose of both the Fourth Amendment and article I, section 9 of the Texas Constitution is to safeguard an individual's legitimate expectation of privacy from unreasonable governmental intrusions. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). A party must establish standing to challenge a search and seizure. *See Kothe v. State*, 152 S.W.3d 54, 59 (Tex. Crim. App. 2004) (addressing standing under Fourth Amendment); *Villarreal*, 935 S.W.2d at 138 (same under United States and Texas Constitutions). The defendant carries the burden of proof to provide facts that establish standing. *See Villarreal*, 935 S.W.2d at 138.

> A person has "standing" to contend that a search or seizure was unreasonable if (1) he has a subjective expectation of privacy in the place or object searched, and (2) society is prepared to recognize that expectation as "reasonable" or "legitimate." . . . .
> Courts have held that (1) a person has a subjective expectation of privacy in the contents of his cell phone, and (2) this expectation of privacy is one that society recognizes as reasonable and legitimate.
> A person's subjective expectation of privacy in a cell phone that he owns and possesses is supported by decades of cases on "standing." A defendant normally has "standing" to challenge a search of places and objects that he owns.
> . . . .
> The factors that courts use in deciding whether a person has a reasonable expectation of privacy in the place or object searched include the following:
> > (1) whether the defendant had a proprietary or possessory interest in the place or object searched;
> > (2) whether the defendant's presence in or on the place searched was legitimate;
> > (3) whether the defendant had a right to exclude others from the place or object;
> > (4) whether the defendant took normal precautions, prior to the search, which are customarily taken to protect privacy in the place or object;

10

(5) whether the place or object searched was put to a private use;

(6) whether the defendant's claim of privacy is consistent with historical notion of privacy.

Ownership or legal possession of the property searched is not the "be-all-end-all" in deciding whether a person has a legitimate expectation of privacy in it. But courts commonly find that a person has a legitimate expectation of privacy in the contents of his cell phone because of its "ability to store large amounts of private data" both in the cell phone itself and by accessing remote services. This data may involve the most intimate details of a person's individual life, including text messages, emails, banking, medical, or credit card information, pictures, and videos. A cell phone is unlike other containers as it can receive, store, and transmit an almost unlimited amount of private information. The potential for invasion of privacy, identity theft, or, at a minimum, public embarrassment is enormous.

. . . .

Although a person may have a reasonable and legitimate expectation of privacy in the contents of his cell phone, he may lose that expectation under some circumstances, such as if he abandons his cell phone, lends it to others to use, or gives his consent to its search.

*State v. Granville*, 423 S.W.3d 399, 405-09 (Tex. Crim. App. 2014) (citations omitted). Generally, "[p]asscodes effectively exclude others from access and demonstrate a clear expectation of privacy." *Gonzalez v. State*, 608 S.W.3d 98, 104 (Tex. App.—San Antonio 2020, pet. ref'd) (citing *Grant v. State*, 531 S.W.3d 898, 901 (Tex. App.—Houston [14th Dist]. 2017, pet. ref'd); *see also Oseguera-Viera v. State*, 592 S.W.3d 960, 965 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd). "But when an individual shares access, he may inadvertently confer authority to consent on someone besides himself." *Gonzalez*, 608 S.W.3d at 104 (citing *Thomas v. State*, 586 S.W.3d 413, 422 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd)); *see also Baird v. State*, 398 S.W.3d 220, 230 (Tex. Crim. App. 2013). He may unwittingly

11

vitiate his expectation of privacy. *Gonzalez*, 608 S.W.3d at 104 (citing *United States v. Barth*, 26 F. Supp. 2d 929, 937 (W.D. Tex. 1998); *State v. Rodriguez*, 521 S.W.3d 1, 11 (Tex. Crim. App. 2017); *Brackens v. State*, 312 S.W.3d 831, 837 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd)).

When a private party discovers contraband in another's private effects and turns it over to the police, the Fourth Amendment is not implicated because the police have not entered any protected area or violated the individual's expectation of privacy. *Rodriguez*, 521 S.W.3d at 11 (citing *Cobb v. State*, 85 S.W.3d 258, 270-71 (Tex. Crim. App. 2002)). When a private party discovers digital contraband files in another individual's electronic device and shows those files to police, the Fourth Amendment is not implicated. *See Brackens*, 312 S.W.3d at 837 (computer); *Gonzalez*, 608 S.W.3d at 104 (iPad); *Rogers v. State*, 113 S.W.3d 452, 458 (Tex. App.—San Antonio 2003, no pet.) (computer).

That said, if a private party has unlawfully accessed digital files, article 38.23 (the "Texas Exclusionary Rule") may apply. *See Gonzalez*, 608 S.W.3d at 105 (citing Tex. Code Crim. Proc. Ann. art. 38.23; *Thomas*, 586 S.W.3d at 419; *Brackens*, 312 S.W.3d at 839). Under the Texas Exclusionary Rule, "[n]o evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of

12

any criminal case." Tex. Code Crim. Proc. Ann. art. 38.23(a). Unlike the Fourth Amendment, which does not extend to private citizens acting in a private capacity, article 38.23's "other person" provision allows for suppression of evidence obtained by private individuals if that information was obtained in violation of the state or federal law. *Ruiz*, 577 S.W.3d at 546-47. Article 38.23 applies to illegal searches or seizures conducted by law enforcement officers or "other persons," even when those private individuals are not acting in conjunction with, or at the request of, government officials. *Miles v. State*, 241 S.W.3d 28, 32, 36 (Tex. Crim. App. 2007). But if the private party lawfully accessed the files, then article 38.23 does not apply. *Ruiz*, 577 S.W.3d at 546; *Thomas*, 586 S.W.3d at 419; *Brackens*, 312 S.W.3d at 839.

Article 38.23(a) does not apply if no violation of law occurred in obtaining the evidence at issue. *See Halili v. State*, 430 S.W.3d 549, 554-55 (Tex. App.— Houston [14th Dist.] 2014, no pet.). A defendant challenging the admission of evidence under article 38.23(a) on the ground it was wrongfully obtained by a private person in a private capacity must establish initially that the private person obtained that evidence in violation of law. *See Ruiz*, 577 S.W.3d at 547-48; *Pham v. State*, 175 S.W.3d 767, 772 (Tex. Crim. App. 2005). If the defendant produces evidence of a statutory violation, the burden shifts to the State to prove compliance. *See Pham*, 175 S.W.3d at 772; *see also State v. Robinson*, 334 S.W.3d 776, 778-79 (Tex. Crim. App. 2011). "'[T]he burden of persuasion is properly and permanently placed upon

13

the shoulders of the moving party.'" *Pham*, 175 S.W.3d at 773 (quoting *Mattei v. State*, 455 S.W.2d 761, 766 (Tex. Crim. App. 1970)).

Assuming without deciding that Smith preserved error, we conclude that the trial court did not abuse its discretion in denying the motion to suppress and in admitting into evidence the evidence sought to be suppressed by the motion. First, the Fourth Amendment was not implicated in this case. *See Rodriguez*, 521 S.W.3d at 11. According to the record, Mandy acted as a private party when she accessed Smith's phone and discovered the video of Smith sexually assaulting her daughter. *See Gonzalez*, 608 S.W.3d at 106 (citing *Brackens*, 312 S.W.3d at 837; *Rogers*, 113 S.W.3d at 458). On appeal, Smith did not challenge any of the trial court's findings in the Order. At trial, the State presented undisputed evidence at the hearing and at trial that Smith permitted Mandy to access his phone on the day she discovered the video, and that he shared his passcode and passwords for his phone and applications and accounts with her. The evidence at trial demonstrated that Mandy used Smith's phone with his knowledge and permission, and she used his passcode to unlock his phone and used their shared password to access the video. The record supports the trial court's denial of the motion to suppress, and it supports the admission of the evidence. Smith failed to take reasonable precautions to protect his privacy in the contents of his phone by allowing Mandy access to his phone and by sharing his passcode and passwords. Accordingly, Smith had no objectively reasonable

14

expectation of privacy in the contents of his phone which he challenged in his motion to suppress. *See Granville*, 423 S.W.3d at 409 ("Although a person may have a reasonable and legitimate expectation of privacy in the contents of his cell phone, he may lose that expectation under some circumstances, such as if he . . . lends it to others to use, or gives his consent to its search."); *see also Oseguera-Viera*, 592 S.W.3d at 964-65 (trial court did not abuse its discretion in finding defendant's subjective privacy interest was objectively unreasonable because he left his mislaid phone in a store for anyone to pick up and he did not password protect it to limit another person's search); *Lown v. State*, 172 S.W.3d 753, 761 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (appellant failed to show that his expectation of privacy was objectively reasonable because, among other reasons, "there is no evidence demonstrating that appellant took any precautions . . . to protect his privacy in the information contained on the computer system[]"); *Rogers*, 113 S.W.3d at 458 (person has no legitimate expectation of privacy in information that is voluntarily turned over to third parties and normal precautions to protect the person's privacy are not taken). Smith does not allege that Mandy violated any other law in obtaining the video, and his article 38.23 complaint fails. *See Ruiz*, 577 S.W.3d at 547-48; *Pham*, 175 S.W.3d at 772. Mandy voluntarily provided a copy of the video to the police, who legally obtained a search warrant to seize the phone and to extract its data.

We conclude the trial court did not abuse its discretion in denying Smith's motion to suppress or in admitting the evidence at trial. We overrule issue one.

Smith's Claim that his Trial Attorney Erred

In his second issue, Smith argues his trial attorney "erred" in failing to request a jury instruction under article 38.23 of the Texas Code of Criminal Procedure. According to Smith, his counsel failed to request the instruction even though Smith met the requirements for the submission of the instruction under *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007), and he argues he should have been afforded the right to the instruction even if the trial court denied his motion to suppress. We interpret this issue as a challenge for ineffective assistance of counsel.

Both the United States Constitution and the Texas Constitution guarantee an accused the right to assistance of counsel. U.S. Const. amend. VI; Tex. Const. art. I, § 10; Tex. Code Crim. Proc. Ann. art. 1.051. This right necessarily includes the right to reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Ex parte Gonzales*, 945 S.W.2d 830, 835 (Tex. Crim. App. 1997). With respect to an ineffective assistance claim, our review of counsel's performance is highly deferential, and there is a strong presumption that counsel's performance fell within the wide range of reasonably professional assistance. *Strickland*, 446 U.S. at 689; *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011) (citing *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006)). To overcome that

16

presumption, Appellant must satisfy the two prongs established by *Strickland v. Washington* by demonstrating that (1) counsel's representations fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense. *Lopez*, 343 S.W.3d at 142 (citing *Strickland*, 466 U.S. at 687); *see also Hernandez v. State*, 726 S.W.2d 53, 55-57 (Tex. Crim. App. 1986) (adopting and applying the *Strickland* test).

An article 38.23 jury instruction is mandatory only when there is a factual dispute regarding the legality of how the evidence was obtained. *Chambers v. State*, 663 S.W.3d 1, 4 (Tex. Crim. App. 2022) (citing *Garza v. State*, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004)); *Pickens v. State*, 165 S.W.3d 675, 680 (Tex. Crim. App. 2005); *Brooks v. State*, 642 S.W.2d 791, 799 (Tex. Crim. App. [Panel Op.] 1982). We find no factual dispute in the record that would have entitled Smith to an instruction under article 38.23. Accordingly, Smith's trial counsel's failure to request an instruction to which Smith was not entitled is not ineffective assistance. *See Cardenas v. State*, 30 S.W.3d 384, 392 (Tex. Crim. App. 2000); *Young v. State*, 991 S.W.2d 835, 839 (Tex. Crim. App. 1999); *Cummings v. State*, 401 S.W.3d 127, 132 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (rejecting claim of ineffective assistance when trial counsel failed to request article 38.23 instruction because appellant was not entitled to such instruction) (citing *Hardin v. State*, 951 S.W.2d 208, 211 (Tex. App.—Houston [14th Dist.] 1997, no pet.)); *Ford v. State*,

282 S.W.3d 256, 267 (Tex. App.—Austin 2009, no pet.) (same). We overrule issue two. We affirm the trial court's judgment.

AFFIRMED.

LEANNE JOHNSON
Justice

Submitted on December 31, 2024
Opinion Delivered February 5, 2025
Do Not Publish

Before Golemon, C.J., Johnson and Wright, JJ.